COMMONWEALTH vs. FLOYD HAMILTON & another[1]
(and ten companion cases).

Suffolk.    June 9, 1975. — November 7, 1975.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Practice, Criminal,* New trial, Plea, Appeal.   *Constitutional Law,* Plea,
    Due process of law.

At a hearing on two defendants' motions to withdraw their pleas of
    guilty, the hearing judge's statement that he would accept defense
    counsel's representation as to the content of the defendants' testi-
    mony if they were to take the stand did not constitute an acceptance
    of the truth of the proposed testimony. [556-557]
Motions to withdraw guilty pleas to armed robbery charges on the
    ground that the defendants had not been informed that their pleas
    would preclude appellate review of a previous denial of their mo-
    tions to suppress were properly denied where the defendants did
    not attempt to corroborate their claim with testimony from counsel
    who had represented them when they entered their pleas, and where
    it appeared that they had discussed their pleas with counsel at that
    time and were aware of the conclusivity of their pleas and that,
    after pleading guilty, the defendants made no attempt to seek ap-
    pellate review of the denial of their motions to appeal. [557-559]

INDICTMENTS found and returned in the Superior Court
on December 13, 1972.

Post-conviction motions were heard by *Roy, J.*

*Joseph F. Flynn* for the defendant Floyd Hamilton
(*Geraldine Hines,* for the defendant Robert Hopkins, with
him).

*Thomas J. Mundy,* Assistant District Attorney, for the
Commonwealth.

GOODMAN, J.   The defendants, Hamilton and Hopkins,
and two others were charged in nine indictments with
armed robbery, each indictment naming a different victim.
They were also charged in a single indictment with assault

---

[1] Robert Hopkins.

Commonwealth *v.* Hamilton.

being armed with a dangerous weapon and in another indictment with carrying a shotgun under their control in an automobile. The indictments arose out of a robbery by three men, one carrying a shotgun, in a café in Jamaica Plain on December 6, 1972, at about 8 P.M. The victims named in the indictments were in the café at the time.

After the robbery, the three men together with a woman fled from the café in an old, light blue Cadillac; and within minutes the police arrived and broadcast a description of the automobile, its direction, and a description of its four occupants — including the information that the female was wearing a long plaid coat. Within two or three minutes after receiving the radio transmission, two police officers in a cruiser saw an old, light blue Cadillac with three males and a female. The officers followed it, calling for assistance; and finally, after the Cadillac stopped, some 10 or 12 minutes after the original broadcast, they arrested the occupants. The automobile was then searched, and the police seized a sawed-off shotgun (which one of the officers had seen on the floor of the automobile as he looked into it), handguns, numerous wallets, and money. The four occupants of the car were then brought back to the café where identifications were made by various of the victims, who thereafter also identified their wallets which the police had retrieved from the automobile.

The defendants brought motions to suppress evidence attacking the legality of the arrests and identifications. Those motions were heard from March 12, 1973, to March 14, 1973, when they were denied.[2] The same day the defendants filed a joint application to appeal the denials of their motions pursuant to G. L. c. 278, § 28E, and that application was denied by a single justice of the Supreme Judicial Court, also on the same day. The next day the prosecuting attorney moved for trial, and a jury was impanelled. The defendants then pleaded guilty, and the following day were each given sentences of from eighteen

---

[2] The judge made detailed findings of fact which include those set out in this opinion.

to thirty years on the robbery indictments and from four to five years on each of the other two indictments, all the sentences to be served concurrently.

On May 15, 1973, the defendant Hamilton filed a motion to withdraw his guilty pleas and to revise and revoke the sentences. The motion alleged generally that the pleas were not "fully informed," as well as other grounds which were never pressed. On March 19, 1974, over a year after the defendants pleaded guilty, Hopkins filed a motion for a new trial (see *Commonwealth* v. *Penrose,* 363 Mass. 677 [1973]) which, construed with his contention at the hearing on the motion, alleged that when he pleaded guilty he was not aware that he was waiving his right to appeal the denial of his motion to suppress.[3] Those post-conviction motions were heard and denied on May 15, 1974, by the same judge who had accepted the guilty pleas. The defendants appealed from these denials under G. L. c. 278, §§ 33A-33G, on assignments of error and the transcript of the hearing on the motions, together with the transcript of the prior proceedings which the trial judge ordered made an exhibit and which includes the proceedings on the motions to suppress and the taking of the guilty pleas.

At the hearing on the motions counsel for Hamilton stated: ". . . [W]hen Mr. Hamilton pleaded guilty, nobody informed him that by pleading guilty he waived his right to appeal. . . . [H]e was under the impression that he could still raise that motion to suppress in the Supreme Judicial Court or the Appeals Court and get a ruling of the Appellate Court on it." The judge then stated to Hamilton's counsel: "I will take your representations as to what this defendant would testify on the stand." Hamilton's counsel acquiesced in having the judge act on this basis, and the judge thereupon, without more, denied the motion. The judge denied Hopkins' motion on the same basis.

---

[3] Both motions were filed by attorneys other than those who had originally represented the defendants and had conducted the proceedings at least through the taking of the guilty pleas. There is no indication when, if ever, they were given leave to withdraw their appearances. See Rule 101C of the Superior Court (1967) and Rule 62 of the Superior Court (1974).

We cannot accept the defendants' extraordinary contention that, by receiving counsel's representations in lieu of testimony, the judge "accepted as fact" and "found" the content of those representations. The judge was, of course, free to disbelieve the represented testimony just as he was free to disbelieve such testimony given by the defendants themselves or by affidavit. *Commonwealth* v. *Bernier*, 359 Mass. 13, 16 (1971). *Commonwealth* v. *Kozerski*, 1 Mass. App. Ct. 106, 110 (1973), S.C. 364 Mass. 833 (1974). And implicit in the denial of the motions is the rejection of such testimony. *Commonwealth* v. *Stanton*, 2 Mass. App. Ct. 614, 621-622 (1974). Indeed, it is difficult to see how the judge could have believed it. Each defendant expressly admitted the commission of the crimes which were carefully and explicitly described in detail by the judge before he allowed the guilty pleas. Each defendant was advised that by pleading guilty he gave up his right to a trial[4], that he "le[ft] it up to this court to impose such sentence as this judge may deem fit...," and that he would not be allowed to withdraw his pleas of guilty if he received a sentence more severe than what he expected.

Further, the defendants, at no time after their pleas, made any attempt to seek appellate review of the denials of their motions to suppress, although they did appeal from their sentences under G. L. c. 278, §§ 28A and 28B. See *Commonwealth* v. *Morrow*, 363 Mass. 601, 611-612 (1973). Hamilton's motion, filed within 60 days of sentencing but after the appeal period had run, did not explicitly make the contention here raised, and Hopkins' motion, which did make that specific contention, came long after the appeal period. See G. L. c. 278, §§ 33B and 33H.

Moreover, each defendant answered in the affirmative when he was asked, "Have you discussed this matter with

---

[4] Hamilton was advised that by pleading guilty he gave up his right to a "trial with or without a jury." Hopkins was similarly advised that by pleading guilty he gave up his right to a "trial by a jury." The formulation in Hamilton's case seems to us preferable, but the distinction (probably made inadvertently) is of no practical significance here. Neither defendant had waived a jury trial which was obviously the only alternative to a guilty plea within the contemplation of the defendants.

... your attorney?"[5] The defendants did not, however, call
their attorneys to testify to those discussions in an attempt
to corroborate their claims. In the absence of such testi-
mony, the judge could assume that counsel had not given
the defendants such egregiously bad advice as to give them
the impression that they could appeal the denial of their
motions to suppress after their guilty pleas (see *Garvin*
v. *Commonwealth*, 351 Mass. 661, 663 [1967]) and that
counsel would have dispelled any such erroneous impres-
sion, however gathered. Cf. *Calabrese* v. *United States*,
507 F. 2d 259, 260 (1st Cir. 1974).

We agree with the defendants that *Boykin* v. *Alabama*,
395 U. S. 238 (1969), requires that the record show the
"conclusivity of the plea on further litigation." *Coleman*
v. *Burnett*, 477 F. 2d 1187, 1195 (D. C. Cir. 1973). But
that does not require that a defendant be advised in so
many words that he waives his right of appeal.[6] "Conclu-
sivity" is, of course, central to the significance of a guilty
plea, and the defendant's awareness of this result is neces-
sary to "a full understanding of what the plea connotes
and of its consequence." *Boykin* v. *Alabama*, 395 U.S. at
243-244. See *Commonwealth* v. *Leate*, 367 Mass. 689, 694
(1975). The defendant's awareness must therefore appear
from the record. *Commonwealth* v. *Morrow*, 363 Mass. at
603. *Commonwealth* v. *Foster*, 368 Mass. 100, 102, 105
(1975). *Commonwealth* v. *Kozerski*, 1 Mass. App. Ct. at

---

[5] The court's interrogation of Hopkins (Hamilton's interrogation was
substantially the same) continued as follows:

THE COURT:          "Are you confused in any way by the questions that
                    I have asked you?"

THE DEFENDANT:      "No, sir."

THE COURT:          "Do you feel that Mr. Troy has fairly and properly
                    represented you?"

THE DEFENDANT:      "Yes, sir."

[6] Such advice, if given, would require careful formulation to avoid
creating confusion as to the right to appeal to the appellate division of
the Superior Court and the right to post-conviction remedies under
special circumstances. See *Commonwealth* v. *Zion*, 359 Mass. 559, 563
(1971); *Kuklis* v. *Commonwealth*, 361 Mass. 302, 305-306 (1972);
*Rachal* v. *Commonwealth*, 369 Mass. 956 (1975).

110. In this case the record of the guilty pleas clearly demonstrates that the defendants were made aware that this was the end of the road and that nothing remained but the sentencing.[7] See *Commonwealth* v. *Morrow,* 363 Mass. at 604-605, in which the interrogation (conducted by counsel instead of the judge) contained approximately the same questions and answers as in this case.

The defendants urge that their application to appeal under G. L. c. 278, § 28E, indicates that they were concerned with an appeal at the time they pleaded guilty. More persuasive is the fact of the rejection of the application to appeal, which emphasizes that only after trial could the defendants appeal the denial of their motions to suppress. It seems rather that the overwhelming case disclosed against the defendants at the hearing on the motions to suppress demonstrated to them the futility of going to trial and impelled the guilty pleas.[8] *Huot* v. *Commonwealth,* 363 Mass. 91, 100-101 (1973).

> *Order denying Hamilton's motion*
> *to withdraw guilty pleas and*
> *to revise and revoke sentences*
> *affirmed.*
>
> *Order denying Hopkins' motion*
> *for a new trial affirmed.*

---

[7] The colloquy with Hopkins as the trial judge took the guilty plea takes up seven pages of the transcript; the colloquy with Hamilton takes up six pages.

[8] It also seems clear to us that counsel could have had no real expectation of prevailing on the motions to suppress. The arrests were made after the female occupant had alighted from the Cadillac, and the arresting officer observed that (as described in the radio dispatch) she was wearing a plaid coat. The search of the automobile was obviously valid. See *Commonwealth* v. *Barnes,* 2 Mass. App. Ct. 357, 360 (1974). The actions of the police officers in bringing the defendants back to the café for identification is within the line of cases beginning with *Commonwealth* v. *Bumpus,* 354 Mass. 494, 500-501 (1968), cert. den. 393 U. S. 1034 (1969). At the café, the identification procedure was designed to minimize the suggestivity of the confrontations. For example, each of those who viewed the defendants did so outside the presence of the other potential identifying witnesses, and none was permitted to communicate with any other such witness.