COMMONWEALTH vs. RICHARD A. CEPULONIS.

Worcester. January 11, 1980. — February 28, 1980.

Present: BROWN, GREANEY, & DREBEN, JJ.

*Practice, Criminal,* Plea, Assistance of counsel, Agreement between prosecutor and defendant. *Constitutional Law,* Assistance of counsel, Plea.

In a proceeding by a defendant to withdraw pleas of guilty to armed robbery charges on the basis that he had ineffective assistance of counsel because his attorney failed to investigate an alibi defense, there was sufficient evidence to warrant the judge's findings that the alibi defense was marginal and that the defendant's decision to plead guilty was his voluntary choice after consideration of all the relevant factors including his attorney's realistic assessment of the alibi. [304-308]

In a proceeding by a defendant to withdraw pleas of guilty on the ground he was coerced into offering the pleas, the judge was warranted in rejecting the defendant's testimony that his attorney demanded an additional $1,000 fee as a condition of representing him at trial. [308]

In the circumstances, a defendant was not entitled to a revocation of his pleas of guilty to armed robbery charges on the basis that his attorney gave him mistaken information as to parole eligibility. [308-310]

There was no basis in the record of a proceeding at which a defendant entered pleas of guilty to support the defendant's contention that he was led to believe that the judge would follow the prosecutor's sentencing recommendation. [310-311]

INDICTMENTS found and returned in the Superior Court on September 25, 1972.

A motion for leave to retract pleas of guilty and for revocation of sentences was heard by *Rutledge, J.*

*Richard C. Heidlage* for the defendant.

*Daniel F. Toomey,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. On November 9, 1972, the defendant entered pleas of guilty to two indictments charging him

with armed robbery. G. L. c. 265, § 17. Before the pleas were accepted, he was examined by a Superior Court judge and indicated in the course of the colloquy that he was aware of the nature of the crimes, that he had committed both offenses, that he understood the maximum possible sentences (any term of years up to life), that he had not been coerced into pleading guilty, and that he was satisfied with his counsel's advice. A Worcester police officer testified to the particulars of the robberies and to the fact that each victim had personally identified the defendant. In her sentencing argument, the defendant's counsel pointed out, among other things, that the defendant was then serving a fifteen-year sentence at the Massachusetts Correctional Institution at Concord for a series of robberies that he had committed in 1969.[1] She requested a "forthwith sentence . . . to Walpole." The prosecutor recommended a "forthwith to Walpole, five to ten years." The judge sentenced the defendant to concurrent terms of ten to twenty years at the Massachusetts Correctional Institution at Walpole.[2]

On February 3, 1977, the defendant moved to retract his pleas and to have the sentences revoked.[3] Following an evidentiary hearing, at which the defendant and his plea counsel testified in detail, a second Superior Court judge (the judge who had accepted the pleas had by then retired) made findings and rulings and denied the motion. The defendant has appealed and alleges that the pleas were not voluntarily or intelligently made because: (1) his plea counsel provided him with ineffective assistance by failing to investigate an alibi defense; (2) he was coerced into offering the pleas; (3) the pleas were induced by counsel's mistaken advice as to parole eligibility; and (4) he expected that the

---

[1] It appears that the defendant had violated his parole from Concord and had been returned to that institution to continue serving his sentence.

[2] These sentences were ordered to be served forthwith and had the effect of wiping out the Concord sentence then in effect.

[3] The defendant's motion was captioned as a motion for new trial. See *Commonwealth* v. *Penrose,* 363 Mass. 677 (1973); *Commonwealth* v. *Hamilton,* 3 Mass. App. Ct. 554, 556 (1975).

judge would adopt and impose the Commonwealth's recommended sentence. We have before us the record made at the time of the pleas, the transcript of the hearing on the motion, and the judge's findings and rulings. The judge's findings will be overturned only if they are unwarranted by the evidence or unjustified in law. *Commonwealth* v. *Murphy*, 362 Mass. 542, 547 (1972). *Commonwealth* v. *Stanley*, 363 Mass. 102, 104 (1973). *Commonwealth* v. *Brown*, 378 Mass. 165, 171 (1979). We also are attentive to the principle that the judge has the superior vantage point from which to observe and weigh the testimony and is the ultimate arbiter on questions of credibility. *Commonwealth* v. *Botelho*, 369 Mass. 860, 868 (1976). *Commonwealth* v. *Subilosky*, 6 Mass. App. Ct. 860 (1978). See *Commonwealth* v. *Hamilton*, 3 Mass. App. Ct. 554, 557 (1975). We affirm the denial of the motion.

1. *Effective assistance of counsel.* The guaranties of the Sixth Amendment to the Constitution of the United States provide a criminal defendant with the right to effective assistance of counsel at each critical stage of the proceedings against him, including a hearing where he pleads guilty. *White* v. *Maryland*, 373 U.S. 59, 60 (1963). *Boyd* v. *Dutton*, 405 U.S. 1, 2 (1972). *Commonwealth* v. *Bolduc*, 375 Mass. 530, 539 (1978). Because the competency of counsel affects the determination of voluntariness, entry of a guilty plea cannot constitute a waiver of the defendant's right to assert that he was incompetently advised. *Tollett* v. *Henderson*, 411 U.S. 258, 267 (1973). *Salkay* v. *Wainwright*, 552 F.2d 151, 153 (5th Cir. 1977). The defendant claims that he informed his plea counsel that he was living in Richmond, Virginia, with his wife when the crimes were committed; that counsel refused adequately to pursue the defense, stating that it would be too costly to investigate; and that, as a result, he was left with the alternatives of either pleading guilty or facing a trial shorn of his only meaningful defense.

In deciding a claim of ineffective assistance of counsel in a criminal case, an examination is required to ascertain

whether there has been "serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth v. Rondeau,* 378 Mass. 408, 411-412 (1979), quoting from *Commonwealth v. Saferian,* 366 Mass. 89, 96 (1974). *Commonwealth v. Domaingue,* 8 Mass. App. Ct. 228, 233 (1979). A failure to investigate and pursue a plausible alibi defense known to, or with normal diligence accessible to, counsel would fall beneath the level of competency expected. See *Osborne v. Commonwealth,* 378 Mass. 104, 111 (1979). However, "failure to pursue a groundless [alibi] defense is not ineffective assistance of counsel . . ., and failure to pursue a marginal [alibi] defense before advising a guilty plea may not amount to ineffective assistance of counsel . . ., especially where the defendant has sufficient reasons to plead guilty," such as the strength of the case against him or the opportunity to receive a favorable disposition.[4] *Id.* at 110. Even in cases where arguably there may have been a defense, some Federal courts have held that advice to plead guilty did not render counsel's assistance ineffective. See *Allen v. VanCantfort,* 436 F.2d 625, 630 (1st Cir.), cert. denied, 402 U.S. 1008 (1971) (insanity defense possibly available; compelling evidence of guilt); *Cavett v. United States,* 545 F.2d 486, 487-488 (5th Cir. 1977) (counsel's advice to plead guilty to avoid penalty under multiple offender act reasonably competent even though previous offenses possibly susceptible to collateral attack); *Jackson v. Estelle,* 548 F.2d 617, 619 (5th Cir. 1977) (counsel's advice to plead

[4] The defendant argues that we should not apply the holding in *Osborne, supra,* concerning the duty of counsel with reference to marginal defenses because the alibi here involved a much stronger defense than the facts concerning the defendant's possible mental irresponsibility brought to counsel's attention in *Osborne.* As discussed later, we think that an examination of the defendant's statement that he was in Virginia when the crimes were committed, in light of all of the other circumstances, reveals that the defense was at best marginal.

guilty reasonably competent because wife's statement to police contradicted possible alibi defense). See also *Commonwealth* v. *Bernier*, 359 Mass. 13, 20-22 (1971) (trial counsel need not present any and every claim or defense desired by his client regardless of merit; counsel is not a "tool for the accomplishment of the ends of his client, whatever the ends might be").

The motion judge rejected the bulk of the defendant's testimony on the alibi and found that plea counsel had discussed the subject with the defendant and had advised him that she did not think he had a defense. He concluded that the defendant's "talk . . . of a possible defense of living in Virginia at the time the offenses were committed is not persuasive."

The evidence found credible by the judge supports the conclusion that the defendant accepted his counsel's advice to plead guilty based on a realistic appraisal of the alibi. Defense counsel, a practitioner for almost twenty years with experience in criminal trial work, testified that she was prepared and ready for a trial if the defendant wanted a trial. She testified that the defendant mentioned a Virginia alibi to her but that "he had no evidence." Although her memory almost five years after the event was understandably dim, the testimony just quoted, in the light of all her testimony, indicates that she questioned the defendant as to corroboration for the alibi and he had nothing of substance to offer in its support. Other factors also undoubtedly had a bearing on the evaluation of the alibi. The defendant had seen and heard the strength of the Commonwealth's case first hand at the probable cause hearing, and he knew that it rested on substantially unchallenged eyewitness testimony.[5] If the de-

---

[5] The defendant argues that the identifications made by the victims occurred some time after the incidents and were subject to mistake. The testimony of the police officer at the hearing on the pleas indicated that one victim had made a photographic identification and that both victims had made identifications at the probable cause hearing. The defendant's argument as to the identifications is weakened by the fact that they were never formally challenged as unreliable or as based on suggestive procedures. It is not argued that plea counsel was remiss in any other respect in the way she prepared the case or handled the matter of the identifications.

fendant took the stand at a trial to espouse the alibi, he faced probable embarrassment from his prior criminal record.[6]  The fact that the robberies were committed while the defendant was on parole, and caused the resumption of a lengthy sentence for previous robberies, caused his counsel to accurately characterize the prosecutor's plea recommendation as "excellent."[7]  There is no question that the defendant knew that he was entitled to a trial, and that he was informed by counsel that she was prepared to defend him. With these facts, the motion judge could also have considered it important that the defendant had waited almost five years to raise the ineffectiveness claim,[8] that he continued to retain plea counsel to represent him on a petition to reduce the sentences heard several years later before the Appellate Division of the Superior Court (G. L. c. 278, § 28B), and that the defendant's wife, the corroborating witness for the alibi, was not called to testify at the hearing on the motion and her absence was not explained.  Plea counsel was not required to engage in a quixotic pursuit of a defense which could not reasonably be expected to exonerate the defendant instead of recommending a guilty plea.  Her advice was based on a manifestly sound appraisal of all the circum-

---

[6] The dispositions occurred prior to the decision in *Commonwealth* v. *Chase*, 372 Mass. 736, 749-751 (1977), which allows trial judges some leeway in excluding evidence of a defendant's prior convictions introduced under G. L. c. 233, § 21, to impeach credibility where the convictions in question are subject to possible prejudicial misuse by the jury.

[7] The recommendation represented a concession by the Commonwealth from an original offer of six to ten years, had the effect of eradicating the Concord sentence, and ran the sentences for both robberies concurrently. The result if adopted would have been a good one for the defendant, who had been convicted of a series of robberies in 1969 and of other criminal offenses in 1967.

[8] During some of this period the defendant was either in Federal custody or incarcerated pending trial for other crimes.  His criminal history from 1973 forward is discussed in *Commonwealth* v. *Cepulonis*, 374 Mass. 487 (1978), and *Commonwealth* v. *Cepulonis*, 7 Mass. App. Ct. 646, 651 (1979).  The history includes Federal convictions for possession of a machine gun and robbing a Federally insured bank and State convictions for robbing a bank and a credit union.

stances facing the defendant and should not be second guessed. *Commonwealth* v. *Stone*, 366 Mass. 506, 517 (1974). We are satisfied that the defendant was informed that the alibi was untenable and that his decision to plead guilty was his voluntary choice after consideration of all the relevant factors including his counsel's bleak but realistic assessment of the alibi.[9]

2. *Coerciveness.* The defendant's argument that the atmosphere surrounding his decision to plead was coercive rests principally on the ineffectiveness claim already discussed and on the additional assertion that plea counsel demanded an additional $1,000 fee as a condition of representing him at trial. The judge impliedly rejected the defendant's testimony as to the demand for additional compensation. That rejection was warranted in view of plea counsel's testimony and the fact that none of the five witnesses who had allegedly overheard the demand was called to testify in support of the extraordinary assertion.[10]

3. *Eligibility for parole.* Plea counsel testified that she advised the defendant that he would be eligible for parole in eighteen months. In fact, because violent crimes were involved and because the defendant was then serving the balance of a sentence as a parole violator, it was likely, if the Commonwealth's sentence recommendation were followed, that the defendant would not have been eligible for parole for at least forty months. G. L. c. 127, § 133.[11] The de-

---

[9] Plea counsel testified that the defendant was principally motivated towards a plea by the prosecutor's favorable recommendation. The defendant testified that the recommendation was the sole reason for his agreement to plead. He was aware of the strength of the Commonwealth's case, his own background, and the weakness of his defense. It is apparent that he considered all these factors together with the prosecutor's recommendation in making his decision, and testimony that the recommendation impressed him necessarily imports his consideration of the other factors.

[10] The defendant testified that the demand was made in the presence of five other detainees who were awaiting court appearances that day in Worcester.

[11] But see those provisions of G. L. c. 127, § 133, which permit the parole board under certain circumstances to parole a prisoner who has served one-third of his minimum sentence on a crime of violence.

fendant asserts that parole eligibility was a key factor in his decision to plead guilty and that counsel's inaccurate prediction [12] renders the plea involuntary. The judge concluded that "any mistaken information, given by [the defendant's] attorney regarding parole eligibility, was not of such significance as to justify . . . allowance of [the] [m]otion for [a] [n]ew [t]rial."

We do not follow the practice prevailing in several of the Federal Circuits that limitations on, or requirements for, parole are direct consequences of being confined and that, as a consequence, special mandatory parole conditions must be accurately brought to the attention of a defendant who is pleading guilty in order to render the plea a voluntary and intelligent one. *Commonwealth* v. *Morrow*, 363 Mass. 601, 606 (1973). *Commonwealth* v. *Stanton*, 2 Mass. App. Ct. 614, 622 (1974). Contrast *Durant* v. *United States*, 410 F.2d 689, 691-692 (1st Cir. 1969); *United States* v. *Watson*, 548 F.2d 1058, 1060-1061 (D.C. Cir. 1977). Rather, it is our rule that "predictions by counsel as to the time which a defendant might have to serve . . . form no basis for attacking a plea, particularly where the judge has advised the defendant that he is not bound by the prosecutor's recommendation, has advised the defendant of the maximum possible sentence, and has made an express finding that the plea has been offered knowingly and voluntarily." *Commonwealth* v. *Stanton, supra* at 622. Accord, *Commonwealth* v. *Jefferson*, 4 Mass. App. Ct. 352, 355 (1976); *Commonwealth* v. *Brown*, 6 Mass. App. Ct. 844 (1978). The limitations on, or requirements for, parole are but "contingent consequences of being confined." *Commonwealth* v. *Morrow, supra* at 606. Our rule recognizes the significant differences

[12] His counsel testified that in October, 1972, she spoke with a parole officer in Concord regarding the defendant's parole eligibility; he advised her that Cepulonis would be eligible for consideration for parole after he had served eighteen months. It is unclear from the record whether this conversation pertained to his Concord sentence, or whether counsel was attempting to gather information to discuss the question of pleading to the armed robberies. She probably based her estimate as to parole eligibility on this conversation.

between the Federal and Massachusetts parole systems, and the fact that parole as a rehabilitative technique is highly dependent on a variety of discretionary factors which are usually considered and applied on a case-by-case basis under applicable statutory and regulatory formulae.

Despite this general rule, a situation could be conceived where a plea's validity might be affected by manifestly erroneous advice as to the time of confinement given to a defendant by his counsel. However, this case does not present such a situation. Some knowledge on the defendant's part of the consequences of confinement and of the workings of the parole system could reasonably be presumed from his status as a parole violator serving out a prior sentence. He was expressly advised when he pleaded that maximum possible sentences of up to life for each offense could be imposed, and counsel diligently explained to him that the sentencing judge was not bound to follow the prosecutor's recommendation. As a consequence of these warnings, he had reason to know that his parole eligibility would be directly linked to the length of his sentences and that any significant deviation from the recommended sentence would considerably enlarge his time of confinement. In these circumstances, counsel's inaccurate prediction as to parole eligibility cannot provide a basis for the relief requested by the defendant.

4. *Sentence expectations.* The last contention is that the defendant honestly believed that the judge would follow the prosecutor's sentencing recommendation. In examining this contention, we have kept in mind that when a plea rests in "any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello* v. *New York,* 404 U.S. 257, 262 (1971). Accord, *Commonwealth* v. *Benton,* 356 Mass. 447, 448 (1969); *Commonwealth* v. *Harris,* 364 Mass. 236, 238 (1973). Basic fairness also requires consideration whether the defendant has reasonable grounds to believe that the bargain has not been fulfilled. *Blaikie* v. *District Attorney for the Suffolk*

*Dist.,* 375 Mass. 613, 616 n.2 (1978). Although the judge accepting the pleas did not advise the defendant that he was not bound by the prosecutor's recommendation, the evidence found credible by the motion judge indicates that plea counsel thoroughly explained the judge's prerogatives in her discussions with the defendant prior to the pleas. In cross-examination the defendant admitted that he had been advised that the judge would not be bound by the prosecutor's recommendation, and he also knew that he was exposed to possible life sentences. In the colloquy connected with the pleas, he told the judge that no promises had been made to him. This statement was more than recital of a script. It accurately reflected what he had been told and indicated that he had a rational comprehension of the sentencing consequences. See now Mass.R.Crim.P. 12(c)(1), (2), 378 Mass. 867 (1979). Further, the record also reveals that the prosecutor fully performed his part of the bargain by recommending concurrent sentences of five to ten years and by leaving argument in favor of the recommendation's adoption to defense counsel.

There is nothing else in the record to support the defendant's contentions that his pleas were involuntarily or unintelligently made. We conclude that he was burdened only by "the weight of an assortment of pressures that are intrinsic to such a situation"[13] (*Commonwealth* v. *Bolduc,* 375 Mass. at 536), and that the pleas were "the defendant's own, guided by reasonable advice of his counsel, his own knowledge of what he [had] done, and a fair understanding of the alternatives." *Commonwealth* v. *Manning,* 367 Mass. 699, 706 (1975).

The order denying the motion to retract the pleas and revoke the sentences is affirmed.

*So ordered.*

---

[13] In this category, we place the testimony that the defendant was wavering to some extent before he finally made up his mind to plead and the testimony that he had an argument with his counsel, who agreed to withdraw from the case if he desired to discharge her.