COMMONWEALTH vs. GEORGE D. HAGGERTY, JR.

Hampden. May 6, 1987. — July 9, 1987.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Homicide. Proximate Cause. Evidence*, Expert opinion. *Constitutional Law*, Assistance of counsel. *Practice, Criminal*, Assistance of counsel, Discovery.

A defendant convicted of first degree murder was entitled to a new trial where he was denied effective assistance of counsel by reason of his trial counsel's failure to investigate and pursue the sole defense available, namely, the possibility that the victim's death from a heart attack was not proximately caused by the defendant's criminal conduct. [441-443]

INDICTMENTS found and returned in the Superior Court Department, three on July 9, 1982, and one on August 12, 1982.

The cases were tried before *William W. Simons*, J., and a motion for a new trial was heard by him.

*Philip X. Murray* for the defendant.

*Charles E. Dolan*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant appeals from his conviction of murder in the first degree, and from the denial of his motion for new trial, claiming that at trial he was denied the effective assistance of counsel. In his motion for new trial, the defendant claimed that the failure of his trial counsel[1] to investigate fully and to pursue the issue whether the defendant's conduct was the proximate cause of the victim's death constituted the ineffective assistance of counsel. The judge denied the motion for new trial. The defendant appeals. The sole issue on appeal is whether defense counsel's failure to investigate and pursue the issue of causation of the victim's death was ineffective assist-

---

[1] Counsel representing the defendant at the motion for new trial and on this appeal was not trial counsel.

ance of counsel. We conclude that the failure to investigate and pursue this issue at trial fell "measurably below that which might be expected from an ordinary fallible lawyer — and . . . it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974).[2] We therefore reverse the conviction of murder in the first degree and remand that case to the Superior Court for a new trial.[3]

We summarize the facts found by the judge at the hearing on the motion for a new trial. In the early morning hours of June 16, 1982, a police officer observed the defendant in the vicinity of the victim's apartment building. The defendant was acting suspiciously, and the officer stopped him and asked him for identification. The defendant identified himself and the officer released him. At that time, the officer noticed that the defendant's hands were bleeding, especially his right hand, and that he had blood on the right leg of his pants.[4] The defendant had two watches[5] in his pocket.

---

[2] The defendant bases his claim of ineffective assistance of counsel on Federal and State constitutional grounds. We have said that, in our view, "if the *Saferian* test is met, the Federal test is necessarily met as well." *Commonwealth* v. *Fuller,* 394 Mass. 251, 256 n.3 (1985). We therefore examine the defendant's claim according to the standard we set out in *Saferian,* and we continue to leave open the question of what differences, if any, exist between the State and Federal standards.

[3] The defendant also was convicted of larceny in a building, G. L. c. 266, § 20; unarmed robbery, G. L. c. 265, § 19; and burglary and assault on an occupant, G. L. c. 266, § 14. The defendant was sentenced to terms of life imprisonment on the unarmed robbery and burglary and assault on an occupant convictions, to be served concurrently with the sentence for murder in the first degree. On appeal, the defendant solely relies on the issue whether his conduct was the proximate cause of the victim's death. He does not argue any error with respect to the unarmed robbery and burglary and assault on an occupant convictions. Thus, those convictions are affirmed. Because the larceny in a building conviction was placed on file without objection, it is not before us. See *Commonwealth* v. *Delgado,* 367 Mass. 432, 437-438 (1975).

[4] The defendant explained the blood on his hands and pants to the officer by saying that earlier he had been in a fight.

[5] The watches later were identified as belonging to the victim.

At approximately 9 A.M. on the morning of June 16, as a result of thumping and noise coming from the victim's apartment in the early morning hours, a neighbor of the victim asked the superintendent of the building to visit the victim and ascertain if she needed any assistance. The superintendent entered the victim's apartment, and in the kitchen he saw the victim lying on the floor, so badly beaten that he did not recognize her. He summoned the police and medical aid. An ambulance took the victim to a hospital. The victim's condition was listed as "critical." The victim remained hospitalized until August 11, 1982, when she died.

On learning of the crimes, the officer who saw the defendant in the early morning hours of June 16 reported his observations of the defendant to the Detective Bureau. As a result, the police obtained a search warrant for the defendant's home. In the defendant's home, the police found two televisions and two watches belonging to the victim.[6]

To meet its burden to prove that the "defendant's conduct [is] the efficient cause, the cause that necessarily sets in operation the factors which cause [the victim's] death," *Commonwealth* v. *Rhoades*, 379 Mass. 810, 825 (1980), the Commonwealth offered the testimony of two medical experts. The experts opined that, in addition to her other injuries, the victim suffered a myocardial infarction (a heart attack) on June 16, and that this heart attack was the proximate cause of her death on August 11. According to the experts, the other injuries were a secondary cause of the victim's death. Defense counsel vigorously cross-examined these experts on the victim's history of heart trouble, her advancing age (eighty-two), and the possibility that she suffered another myocardial infarction on August 11, unrelated to the trauma of June 16. Defense counsel did not offer any expert testimony based on the theory that the victim's death was unrelated to the trauma of June 16.

At the hearing on the motion for new trial, defense counsel presented evidence from a medical expert contradicting the

---

[6] The police also found one pair of pants ripped above the knees with blood spots on the right leg.

Commonwealth's experts. That expert had reviewed the autopsy report, the death certificate, the hospital records, and the testimony of the Commonwealth's experts. The defendant's medical expert stated that, "based upon the advanced age of this woman, and the autopsy findings indicating severe extensive underlying coronary disease, a condition which is expected at some time, particularly in a woman of this age, to lead to myocardial infarction and damage; and that in view of her course, prior to that date, . . . it cannot be concluded that the trauma [of June 16] played any definitive role in leading to this myocardial infarction [causing death], and that the myocardial infarction, absent other evidence, would have to be accepted medically as being the expected result of the natural progression of her advanced coronary disease." He opined that "it [could not] be concluded with any reasonable degree of medical certainty that [the victim's] death was related to that trauma [of June 16]."

At the hearing on the motion for new trial, trial counsel admitted that he initially determined that the seven- or eight-week time period between the trauma of June 16 and the date of the victim's death was sufficiently distant so that "someone could conclude something else [ ] intervene[d]," causing the victim's death. Therefore, he sought funds to engage a medical expert. In spite of his analysis, and despite the fact he obtained funds for a medical expert's opinion, counsel did not explore[7] the possibility that the death of the victim was not proximately caused by the defendant's criminal conduct. Instead, he decided not to pursue this strategy[8] because, according to him, if his expert's opinion were adverse to the defendant, it might become

---

[7] Counsel did speak to his own physician briefly.

[8] Counsel pursued the theory that discrepancies in the testimony of the victim's neighbor, regarding the time she heard the thumping noises, and the officer, regarding when he saw the defendant, established that the beating of the victim had not yet occurred when the officer stopped the defendant. Counsel also used the fact that the victim told two nurses that the culprit was a white man. (The record reveals that the defendant is black.) Counsel combined these facts to argue to the jury that "lightning strikes twice" and that someone other than the defendant beat and assaulted the victim immediately after the defendant left the apartment.

available to the Commonwealth and the Commonwealth then could use that evidence at trial. That reasoning is incorrect and unpersuasive.

The claim that, because of reciprocal discovery, the Commonwealth would become privy to the expert's opinion, which, if unfavorable, might aid the Commonwealth reflects a misreading of our rule. Rule 14 (a) (3) (A) of the Mass. R. Crim. P. allows the Commonwealth reciprocal discovery only of material which the defendant intends to use at trial. See Mass. R. Crim. P. 14 (a) (3) (A), 378 Mass. 875 (1979). If the opinion were unfavorable, the witness need not have been used and, therefore, under the rule the witness's identity need not have been disclosed. Thus, counsel's reason for not investigating the causal relationship between the victim's death and the defendant's conduct simply was wrong.

Counsel's further fear that, because counsel would have to submit the bill to the Commonwealth, the prosecution could discover the identity of the doctor by looking through the bills and then could produce the expert as its witness is without merit. Counsel's theory imputes unethical conduct to the Commonwealth without any basis in the record. In addition, a judge surely could exclude evidence obtained through prosecutorial misconduct or, if requested, could issue a protective order against such conduct. Counsel's reasoning is no more than conjecture and is not persuasive on the issue of his failure to investigate fully and to pursue the issue of the proximate cause of the victim's death.

This is not a case where "arguably reasoned tactical or strategic judgments . . . are called into question . . . ." *Commonwealth* v. *Rondeau*, 378 Mass. 408, 413 (1979). Rather, in this case, defense counsel did not investigate the only realistic defense the defendant had to the charge of murder in the first degree.[9] In that respect, it is analogous to those cases where,

---

[9] The Commonwealth's evidence overwhelmingly showed that the defendant assaulted and beat the victim. The items taken from the victim and found in the defendant's possession were, for the most part, from the victim's bedroom. Moreover, a smear of blood was found on the wall above a six-foot high shelf in the bedroom. The victim stored bedding on that

at trial, defense counsel abandons the only defense available to a defendant and leaves the defendant without any defense at all. See, e.g., *Commonwealth* v. *Westmoreland*, 388 Mass. 269 (1983); *Commonwealth* v. *Street*, 388 Mass. 281 (1983). Failure to investigate the only defense a defendant has, if facts known to or with minimal diligence accessible to counsel support that defense, falls beneath the level of competency expected. See *Osborne* v. *Commonwealth*, 378 Mass. 104, 111 (1979); *Commonwealth* v. *Cepulonis*, 9 Mass. App. Ct. 302, 305 (1980).

The Commonwealth argues that, although counsel did not retain an expert, defense counsel adequately and effectively cross-examined the Commonwealth's experts and brought before the jury evidence that the victim's condition had improved in July. We disagree with the Commonwealth's assertion that it "does not take an expert to interpret this information" and that, because "defense counsel had led the Commonwealth's own expert to admit that death may have been the result of natural causes[, i]t is difficult to envision what more another 'expert' could have added to benefit the defendant's case." The testimony of the Commonwealth's experts provided compelling support for the theory that the injuries of June 16 caused the victim's death. "Disbelief of testimony is not the equivalent of proof of facts contrary to that testimony." *Boice-Perrine Co.* v. *Kelley*, 243 Mass. 327, 330 (1923). See *Commonwealth* v. *Marino*, 343 Mass. 725, 728 (1962). Disbelief of testimony "would not furnish the basis for a finding the other way." *Stuart* v. *D.N. Kelley & Son*, 331 Mass. 76, 78 (1954). The question whether death proximately was caused by the defendant required counsel to investigate that defense by seeking the opinion of an expert.[10]

---

shelf. The defendant admitted that he put the television sets in pillow cases and sheets when he took them. According to the defendant, the bedding was in the front hall. The defendant's denial that he entered the bedroom is inconsistent with the physical evidence.

[10] If that opinion were adverse to the defendant, counsel of course need not have used it.

We conclude that trial counsel's failure to commence even a minimal investigation whether the defendant's conduct proximately caused the victim's death denied the defendant the effective assistance of counsel. The convictions of unarmed robbery and of burglary and assault on an occupant, for which the defendant currently is serving concurrent life sentences, are affirmed. See note 3, *supra*. The judgment of the Superior Court on the conviction of murder in the first degree is reversed, the order denying the motion for new trial is reversed, the verdict is set aside, and the case is remanded to the Superior Court for a new trial solely on the indictment for murder in the first degree.

*So ordered.*