NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-50

COMMONWEALTH

vs.

KEVIN M. TYNAN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant was charged by separate complaints with two counts of breaking and entering a building in the nighttime with the intent to commit a felony, four counts of vandalism, and one count of larceny from a building. The defendant entered a plea agreement whereby he admitted to sufficient facts as to all counts charged, was found guilty of larceny from a building and one count of breaking and entering in the nighttime with the intent to commit a felony, was sentenced, and served his sentence; but later he filed motions to withdraw his admissions. A judge of the District Court, who was also the plea judge, denied an evidentiary hearing and denied the motions to withdraw the pleas. For the reasons that follow, we affirm.

Factual Background. We summarize the relevant facts based on the uncontested evidence included in various applications for

search warrants. On November 4, 2018, Vermont police officers discovered a break-in at Pownal Elementary School in Pownal and that medication was stolen. Similarly, on November 12, 2018, in the nearby western Massachusetts town of Clarksburg, police officers discovered that the garage had been broken into at Clarksburg Elementary and that someone had attempted to break into the school.

Back in Vermont, on Sunday, November 18, 2018, police officers discovered that someone had again broken into the Pownal Elementary School. Surveillance video footage revealed that the suspect was driving a tan colored sedan. The footage also revealed the suspect was carrying a red satchel and wearing a red hooded sweatshirt, brown shoes, and a white mask. That same day, in nearby Stamford, Vermont, the Stamford Elementary School was broken into and a safe from the principal's office was taken. The next day, officers discovered that Clarksburg Elementary, which is across the border from Stamford, Vermont, had been broken into and prescription medication from the nurse's office had been stolen.

On November 21, 2018, officers conducted a property check at Walter B. Howard Elementary School in New Lebanon, New York at around 5 A.M. When they arrived, they saw an unoccupied 2003 Buick Century parked by the dumpsters behind the school, which they determined was registered to David Tynan of North Adams,

2

Massachusetts.  Officers found that the school had been broken into, that a pry bar was used to force open several classroom doors and the nurse's office, and that cabinets and medicine lockers were ransacked.  Surveillance video footage showed an individual wearing a red hooded sweatshirt and similar shoes to the individual spotted on surveillance video footage at the break-in at the Pownal Elementary School in Vermont.

After checking both the North Adams police department's records and the Registry of Motor Vehicles' records, Massachusetts officers discovered that the defendant and David Tynan were brothers.  Because David Tynan did not have a criminal record and the defendant had a criminal record that included charges for breaking and entering, larceny from a building, and obtaining prescription narcotics by fraudulent means, the defendant became the target of the investigation.  Additionally, because the registration for the defendant's vehicle had been revoked, the investigating officers believed that the defendant might be using his brother's vehicle.

Based on all of this information, North Adams police officers obtained a search warrant to place a global positioning system (GPS) tracking device on the 2003 Buick Century registered to David Tynan.  Investigation revealed three potential residences for the defendant, one of which, specifically 52 George Avenue in North Adams, Massachusetts, was

3

also a listed residential address for David Tynan.  Although officers went to each of these locations in the hopes of finding the 2003 Buick Century, the vehicle was not located within the allotted fifteen-day period, and the search warrant was returned unexecuted.

At around 4 A.M. on December 2, 2018, Molly Stark Elementary in Bennington, Vermont was broken into.  The nurse's office was targeted and medications belonging to students were stolen.  Surveillance video footage showed an individual walking around the school wearing a red hooded sweatshirt, a dark colored jacket, tan pants, brown shoes, a brown knit hat, and a dark cloth covering the face.  Based on the information from this most recent break-in, officers renewed their search for the 2003 Buick Century registered to David Tynan.

On December 3, 2018, Sergeant Albert Zoito went to 27 Wall Street, North Adams, Massachusetts:  one of the potential residential addresses for the defendant.  The address was a three-family apartment building with a driveway along its southern side that connected to Wall Street.  The property had a detached five-bay garage at the end of the driveway, which could be seen from the street.[1]  Sergeant Zoito walked down the

---

[1] The officer noted that they believed that there was no expectation of privacy in this driveway area, in part because people visiting the apartment and other apartment owners might

4

driveway and, while looking through windows on the doors of the detached garage with his flashlight, located the 2003 Buick Century. Officers received a new search warrant to enter the garage based on this information[2] and placed a GPS device on the 2003 Buick Century registered to David Tynan.

Based on information from the GPS device, officers were able to track the vehicle on December 15, 2018, going to Hoosick Falls Junior/Senior High School in Hoosick Falls, New York and stopping in the parking lot. The vehicle was later tracked driving past the Cambridge Central School in Cambridge, New York and stopping behind the school. New York officers then located the 2003 Buick Century on a street directly behind the Cambridge Central School.

---

utilize the driveway. The officer's subjective belief about whether a reasonable expectation of privacy existed is not relevant to our analysis. See Commonwealth v. Comenzo, 489 Mass. 155, 159 (2022) (subjective component of analysis relates to individual).

[2] This warrant was also based on an officer-conducted inquiry into information publicly posted on Facebook, which revealed that the defendant's profile stated he was living in North Adams. They also located a profile for the defendant's mother, which listed her most recent employment as a nurse with Williamstown Elementary School and BART Charter Public School, located in Williamstown and Adams, Massachusetts, respectively. This led officers to believe that the defendant might have gained knowledge from his mother of school nurse offices and medication locations. North Adams police also had learned of three 2014 school break-ins and medication thefts in Massachusetts that had involved the defendant. Given the path of our analysis and our conclusions below, this additional support is largely irrelevant to our discussion.

The New York police officers, after hearing a loud banging sound coming from behind the school, saw the defendant driving the 2003 Buick Century and pulled him over. They then searched him and located two blue latex gloves in his pocket. Officers also found a small container with pills that were identified as Ritalin. After obtaining a search warrant to search the vehicle, the officers found flashlights, numerous pairs of gloves, Clonazepam pills, powdered morphine, and the safe that had been stolen from Stamford Elementary School inside the vehicle. The safe door had been pried open and was being held together by black duct tape. The officers also found index cards that contained both directions to Cambridge Elementary School and Hoosick Falls Junior/Senior High School and information about how to avoid detection and where to find items in the schools, such as pills and a Keurig coffee maker.

Back in Massachusetts, police officers also obtained and executed a search warrant on 27 Wall Street, where they found and seized brown dress shoes, a white Apple iPhone, an iPad, a red notebook, and prescription medication bottles.[3] Additionally, officers later identified a Keurig coffee maker stolen from the Pownal Elementary School in the photographs

---

[3] Officers also located and photographed black duct tape, but did not tag or seize it. Duct tape had been used by the individual who broke into Stamford Elementary School on November 18, 2018, to hold a window together.

taken during the execution of that search warrant. Based on this information, officers obtained and executed another search warrant for 27 Wall Street and found and seized the Keurig coffee maker. The officers also obtained a search warrant for the contents of the defendant's iPhone and iPad.

Procedural Background. The defendant pleaded guilty in New York to breaking into the Cambridge Central School and the Walter B. Howard Elementary School as well as possessing the stolen safe from the Stamford Elementary School. After having served his ten-month sentence, the defendant was transferred to Columbia County Jail in Hudson, New York, where he was held for an additional six weeks. At no point during his incarceration in New York did the defendant receive any substance use treatment. At this time, the defendant still had pending charges in Vermont and Massachusetts.

The defendant's attorney for the cases in Massachusetts negotiated a plea deal for the defendant to serve eighteen months in the house of correction -- which his attorney believed would be necessary for the defendant to participate in the Residential Substance Abuse Treatment (RSAT) program, a six-month intensive substance use program only offered to people serving more than a twelve-month sentence -- with a period of probation afterwards. After the defendant admitted to sufficient facts for a finding of guilty of all charges and was

7

found guilty of two of them, his defense counsel asked that the defendant be placed in the RSAT program at the Berkshire County house of correction. The defendant was sentenced on the two convictions to eighteen months in the house of correction with an RSAT recommendation; probation was not imposed, and the rest of the charges were continued without a finding for eighteen months and then dismissed.

On May 31, 2022, in each case, the defendant filed an identical motion to withdraw his admissions to sufficient facts. The motion judge, who was also the plea judge, denied the motions without an evidentiary hearing after finding that trial counsel was not ineffective in her representation and that her advice about parole was collateral. The defendant now appeals.

Discussion. We treat the defendant's motions to withdraw his pleas as a motion for a new trial pursuant to Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001). See Commonwealth v. Resende, 475 Mass. 1, 12 (2016). Rule 30 (b) authorizes a judge to grant a new trial at any time if it appears that justice may not have been done. "As a general matter, [a] motion for a new trial is addressed to the sound discretion of the judge, . . . and an appellate court will examine the motion judge's conclusion only to determine whether there has been a significant error of law or other abuse of discretion" (quotations omitted). Commonwealth v. Watkins (No.

8

1), 486 Mass. 801, 804 (2021).  Where, as here, the motion judge was also the plea judge, we give special deference to the judge's findings of fact and ultimate decision.  Commonwealth v. Corey, 493 Mass. 674, 684 (2024).

The defendant argues that the motion judge erred in denying his motions to withdraw his pleas because his trial counsel was ineffective.  "Where a motion for a new trial is based on ineffective assistance of counsel, the defendant bears the burden of proving entitlement to a new trial by showing that the behavior of counsel fell below that of an ordinary, fallible lawyer and that such failing 'likely deprived the defendant of an otherwise available, substantial ground of defence.'"  Commonwealth v. Comita, 441 Mass. 86, 90 (2004), quoting Commonwealth v. Saferian, 366 Mass. 89, 96-97 (1974).  In this context, he must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," and "he must convince the court that a decision to reject the plea bargain would have been rational under the circumstances" (quotation and citation omitted).  Commonwealth v. DeJesus, 468 Mass. 174, 183 (2014).  The defendant argues, as he did below, that his counsel was ineffective for failing to investigate whether the evidence obtained as a result of Sergeant Zoito's observations from the driveway of 27 Wall Street and the GPS device might be

9

suppressed.  He also argues his counsel was ineffective in giving him incorrect advice regarding his potential eligibility for parole release.  The motion judge reasoned that counsel was not ineffective for failing to file a motion to suppress because any such motion would have been unsuccessful.  Additionally, the judge stated that advice concerning parole rendered by counsel was not ineffective because it only concerned collateral consequences.  We address each of the defendant's arguments in turn before discussing the defendant's final argument, that the judge was required to hold an evidentiary hearing regarding his motions.

1.  Failure to investigate or file motion to suppress.  "In cases where tactical or strategic decisions of the defendant's counsel are at issue, we conduct our review with some deference to avoid characterizing as unreasonable a defense that was merely unsuccessful" (citation omitted).  Commonwealth v. Kolenovic, 471 Mass. 664, 673 (2015).  The Commonwealth argues that defense counsel's inaction in evaluating whether to file a motion to suppress was a tactical decision and should be reviewed as such.  Put plainly, the record does not support this interpretation.

Trial counsel's affidavit made it clear that she "did not review or obtain copies of any search warrants issued," and accordingly did not consider whether a motion to suppress might

10

have been viable.  Defense counsel instead only considered the strength of the Commonwealth's case and believed that getting the defendant into RSAT, which required at least twelve months of incarceration, would delay the defendant's extradition to Vermont, where treatment was not available, and would allow the defendant to receive treatment and be in the best position for his Vermont cases.  Because trial counsel did not review the search warrants or consider suppression, this inaction should not be considered a strategic decision or reviewed as such.  Therefore, whatever consideration defense counsel gave to the strength of the Commonwealth's case and the pending status of the Vermont cases is not considered in the analysis.

We also agree with the defendant that "[t]he failure of counsel to litigate a viable claim of an illegal search and seizure is a denial of the defendant's Federal and State constitutional right to the effective assistance of counsel." Comita, 441 Mass. at 90, quoting Commonwealth v. Pena, 31 Mass. App. Ct. 201, 204, 207 (1991).  To withdraw his pleas, however, the defendant must also show, among other things, that such a motion would have been granted.  See Commonwealth v. Fulgiam, 477 Mass. 20, 29 (2017).

11

The defendant argues that because the driveway[4] from which Sergeant Zoito approached the garage was within the curtilage of the residence, any investigative encroachment on it without a warrant was unconstitutional.  "The Supreme Court has held that an area is within the curtilage of a residence only when it is 'so intimately tied to the home itself' that 'an individual reasonably may expect that the area in question [will] be treated as the home itself.'"  Commonwealth v. McCarthy, 428 Mass. 871, 874 (1999), quoting United States v. Dunn, 480 U.S. 294, 300, 301 (1987).  Courts consider four factors when deciding whether an area is within the curtilage of a home: "(1) the proximity of the area to the home, (2) whether the area is included within an enclosure surrounding the home, (3) the nature of the uses to which the area is put, and (4) the steps taken by the resident to protect the area from observations by people passing by."  McCarthy, supra.  "The determination as to whether a particular area is within or outside the curtilage is generally a mixed question of fact and law."  United States v. Mumme, 985 F.3d 25, 40 (1st Cir. 2021).

---

[4] Although the defendant argues in his brief that "the backyard" was within the curtilage of his residence, he uses the term "backyard" inconsistently -- in some places to include the driveway but in others to refer to an area adjacent to the driveway.  Because there is no evidence from the search warrant affidavit or otherwise that Sergeant Zoito walked on any area other than the driveway, the judge would have focused on whether the driveway itself was within the curtilage.

Nothing in this record persuades us that the judge erred or abused his discretion when he concluded that, presented with a motion to suppress, he would have found that the 117-foot driveway, including the portion immediately in front of the garage, was not within the curtilage of the residence. While the factors are not mechanically applied and there is no bright line rule regarding driveways of shared housing, see Commonwealth v. Fernandez, 458 Mass. 137, 143 (2010), the outcome in this case is clear, as the judge explained. The search warrant affidavit; the defense investigator's affidavit, diagram, and photographs; and the defendant's own affidavit submitted with his motions show that the driveway was not proximate to the defendant's third-floor apartment, that little if any of the space was "included within an enclosure surrounding the home" in any meaningful sense of that phrase,[5] that the space was used by others, presumably also residents of the three-family apartment building, and that the defendant took no steps to protect the space from observation. Compare id. at 144 (driveway of multifamily apartment was within curtilage where defendant lived on first floor apartment of "three-family home," driveway was "the width of one vehicle and the length of

---

[5] The most "enclosed" part of the driveway was the portion in front of the garage; that portion was not only the furthest from the house but was "enclosed" in part by vegetation separating it from the grassy yard behind the house.

two," none of the other apartments had access to driveway, no one seeking to enter home would traverse driveway, and only defendant's vehicle was seen within driveway).[6]  As the driveway was not within the curtilage of the defendant's apartment, the observations made by the officer were constitutional under the "plain view" doctrine.  See Commonwealth v. A Juvenile (No. 2), 411 Mass. 157, 160 (1991) (no unconstitutional search where police officers entered private driveway and inspected exterior of car without warrant).  Accordingly, the judge did not err or abuse his discretion by finding that trial counsel was not ineffective for failing to research this issue or attempt to litigate it.[7]

---

[6] For similar reasons we are unpersuaded by the defendant's suggestion that the garage was within the curtilage of his home. The search warrant affidavit averred that (1) the garage contained three vehicles unrelated to the investigation (and, inferably, not owned by the defendant); and (2) the door to the garage bay containing the Buick Century was not secured by a remote garage door opener and was not separated from the other bays by any internal dividers or other barriers to observation. Compare Commonwealth v. Sanchez, 89 Mass. App. Ct. 249, 251-252 (2016) (shed in yard was part of curtilage of third-floor apartment where defendant rented it from building owner, restricted access to it by means of padlock placed on its door, and enjoyed exclusive use of it compared to residents of other apartments).  We add that we do not read the affidavit to mean that Sergeant Zoito, if he opened the garage door at all, did so before observing the Buick Century through the garage door window.

[7] The defendant also suggested to the motion judge, in a one-sentence footnote, that a motion to suppress would have been successful because he had a reasonable expectation of privacy in

14

2. Counsel's advice regarding parole. While discussing the defendant's possibility of being eligible for parole if the defendant tendered a plea, defense counsel advised the defendant that she believed the defendant "was virtually certain to receive parole after half the committed sentence."[8] We agree with the defendant that this advice was incorrect because the defendant's circumstances created a presumption against release. 120 Code Mass. Regs. § 300.04(2) (2017) ("The presence of a . . . warrant indicating that the inmate is wanted to answer other criminal charges . . . creates a strong presumption against parole release. . . . A pending criminal case will also create a like presumption against parole release").

"Generally, under Massachusetts law, defense counsel's failure to inform a defendant of collateral or contingent consequences of a plea does not render a plea involuntary" (citation omitted). Commonwealth v. Sylvester, 476 Mass. 1, 6 (2016) (rejecting ineffective assistance claim). See Commonwealth v. Henry, 488 Mass. 484, 497 (2021) (same). To

---

the garage bay assigned to him, and thus any search of that bay without a warrant was unconstitutional. Although the Commonwealth counters this argument in its brief, it does not appear that the defendant is raising this argument on appeal.

[8] The Commonwealth does not contend that these statements were not made. It also seems implicit in the motion judge's findings that he credited defense counsel's affidavit and found that this advice was actually given to the defendant.

15

support a claim of ineffective assistance in the context of incorrect legal advice during plea negotiations, the advice must relate to issues which are not collateral, such as the risk of deportation.  See Padilla v. Kentucky, 559 U.S. 356, 369 (2010); Sylvester, supra.  The question before us is thus whether the judge erred or abused his discretion when he concluded that plea counsel's incorrect advice concerning the likelihood of the defendant being released after serving one-half of his committed sentence related to a collateral or contingent consequence of the admissions to sufficient facts and did not render them involuntary.  We hold that the judge did not err or abuse his discretion.

In Commonwealth v. Stanton, 2 Mass. App. Ct. 614, 621-622 (1974), we confronted a very similar issue when a defendant claimed his counsel had incorrectly advised him that he "would be out of jail in a short time."  In that case we held that "such predictions by counsel as to the time which a defendant might have to serve . . . form no basis for attacking a plea," because the details of parole and of the defendant's chances for an early release are "contingent consequences of being confined" (citation omitted).[9]  While the legal landscape of this area of

---

[9] Parole may be thought of as "contingent" because its grant or denial turns in part on the discretionary decision of a board that is not subject to the direct control of the sentencing court or the parties.

the law changed somewhat after Padilla was decided, this logic still rings true for, and our holding in Stanton still applies to, parole. See Henry, 488 Mass. at 497.

In Commonwealth v. Cepulonis, 9 Mass. App. Ct. 302, 308-309 (1980), S.C., 384 Mass. 495 (1981), counsel advised the defendant he would be eligible for parole in eighteen months when in reality the defendant would be eligible for parole after serving at least forty months. Despite this mistake, we concluded that "counsel's inaccurate prediction as to parole eligibility cannot provide a basis for the relief requested by the defendant." Id. at 310. We focused on the facts that the defendant had some experience with confinement and the parole system, that he was expressly advised of the maximum sentence for each offense, and that his counsel explained that the sentencing judge was not bound by the prosecutor's recommendations. Id. However, we did acknowledge that there could be a case in which the validity of the plea "might be affected by manifestly erroneous advice as to the time of confinement given to a defendant by his counsel." Id.

The defendant argues that this case presents the type of exception in which ineffective assistance of counsel can be found because counsel "affirmatively provide[d] erroneous advice on a collateral issue and the defendant relie[d] upon that advice in tendering a plea." But the judge rejected this claim,

17

and on this record, his decision was not outside the range of reasonable alternatives. The defendant had already served a sentence in New York, where he did not receive treatment, and had charges with which he "was particularly concerned" pending against him in Vermont, where he would not receive treatment, when he pleaded guilty in Massachusetts to two crimes out of the seven with which he was charged in exchange for an eighteen-month sentence in a house of correction where he would likely receive treatment. If the defendant believed that he would be released to the community after serving nine months as he now claims, the belief was not reasonable, the judge found, given the pendency of the Vermont charges. The judge was the final arbiter on matters of credibility. Commonwealth v. Scott, 467 Mass. 336, 344 (2014). A viable defense to the Massachusetts charges was not identified in the rule 30 (b) motions beyond the police officers' allegedly unconstitutional intrusions on the defendant's privacy to collect evidence; and under oath at the plea colloquy, the defendant stated that his admissions were "not the result of force or threats, promises, or other assurances." These responses "matter greatly," and the judge was entitled to rely on them. Commonwealth v. Hiskin, 68 Mass. App. Ct. 633, 638-639 (2007). The defendant cites no binding precedent to support the argument that counsel's incorrect advice standing alone is sufficient to render an otherwise

18

knowing and voluntary plea invalid, and our cases suggest it is not.  See Commonwealth v. Santiago, 394 Mass. 25, 30 (1985) (judge's failure to inform defendant of parole consequences did not invalidate pleas, because "limitations on, or requirements for, parole . . . are but contingent consequences of being confined" [quotation and citation omitted]); Commonwealth v. Indelicato, 40 Mass. App. Ct. 944, 945 (1996) ("Mistaken advice as to parole eligibility . . . has been held not to vitiate the basis for a plea").

3.  Evidentiary hearing.  Finally, the defendant argues that the motion judge abused his discretion in failing to conduct an evidentiary hearing.  The motion judge had the authority to decide the motions "on the basis of the facts alleged in the affidavits without further hearing if no substantial issue is raised by the motion or affidavits."  Mass. R. Crim. P. 30 (c) (3).  Doing so does not deprive a defendant of due process rights.  See Lykus v. Commonwealth, 432 Mass. 160, 163 (2000).  We "defer to the sound discretion of the judge below whether a motion for postconviction relief requires a hearing," id., and only reverse if we conclude that the judge abused that discretion.  Commonwealth v. Amaral, 482 Mass. 496, 509 (2019).

To determine whether an issue is substantial, we consider "both the seriousness of the issue itself and the adequacy of

the defendant's showing" (citation omitted).  <u>Commonwealth</u> v. <u>Marrero</u>, 459 Mass. 235, 240 (2011).  Here, the affidavits accurately described and outlined the entire factual basis for the defendant's ineffective assistance of counsel claim.  The parties do not disagree regarding any of the underlying facts that we view as material to the claim.  It is unclear what information an evidentiary hearing would have produced for the judge's consideration where the Commonwealth agreed to the underlying facts as the defendant described them.  See <u>Commonwealth</u> v. <u>Gordon</u>, 82 Mass. App. Ct. 389, 395 (2012) ("An evidentiary hearing may not be necessary, however, if the substantial issue raised is solely a question of law, or if the facts are undisputed in the record").  Holding, as we do, that none of the claimed issues merit a new trial, those same issues do not require us to override the discretion of the motion judge

not to hold an evidentiary hearing.  Accordingly, we affirm his decision.

Order denying motions to
  withdraw guilty pleas
  affirmed.

By the Court (Sacks, Singh &
  Walsh, JJ.[10]),

_Signature_

Assistant Clerk

Entered:  May 13, 2024.

---

[10] The panelists are listed in order of seniority.