COMMONWEALTH *vs.* ANSELMO AVILES.

No. 89-P-1000.

Worcester. June 6, 1991. - August 15, 1991.

Present: Smith, Gillerman, & Porada, JJ.

*Constitutional Law,* Assistance of counsel. *Alibi. Practice, Criminal,* Assistance of counsel, Argument by counsel, New trial.

A criminal case was remanded for an evidentiary hearing on the defendant's motion for a new trial to determine whether trial counsel's conduct of the case was the result of deliberate tactical choices that were not "manifestly unreasonable" and whether evidence not offered by trial counsel, in the nature of an alibi from two defense witnesses, would have made a material difference in the jury's determination. [246-249]

INDICTMENTS found and returned in the Superior Court Department on October 7, 1988.

The cases were tried before *William H. Welch,* J., and a motion for a new trial was considered by him.

*Conrad W. Fisher* for the defendant.

*Sean J. Gallagher,* Assistant District Attorney, for the Commonwealth.

GILLERMAN, J. On May 16, 1988, two men forced their way into the victim's house through the kitchen door. The victim, whose husband was still at work, had just put her child to bed. While one of the intruders stood guard at the door, the other, with a hunting knife held to the victim's throat, ordered her to undress, ripped off her underclothes, and attempted intercourse by force, evidently unsuccessfully. After this brief, violent episode, the intruders escaped through the same door they had entered.

In October of that year, a Worcester County grand jury indicted the defendant for three offenses: assault with intent to commit rape; armed assault in a dwelling; and armed bur-

glary. On January 25, 1989, a jury found the defendant guilty of all three offenses. The defendant has appealed from the judge's denial of a motion for a new trial without conducting an evidentiary hearing. The motion rested principally upon the claim of ineffective assistance of counsel. See *Commonwealth* v. *Saferian*, 366 Mass. 89 (1974); *Commonwealth* v. *White*, 409 Mass. 266, 272 (1991). We summarize the evidence that bears upon the defendant's claim.

1. *The Commonwealth's case.* Other than the victim, there were no witnesses to the crime, no inculpatory statements of the defendant, and no physical evidence which tied the defendant to the victim's ordeal. The Commonwealth's case depended entirely upon the victim's in-court and out-of-court identification of the defendant as her assailant. On that issue the jury could reasonably have found that the victim twice looked through an array of photographs and twice identified the defendant as her assailant. One of the arrays, which we examined, included a photograph of the defendant's brother who closely resembled the defendant. On another occasion, however, while in a police vehicle driving through the neighborhood in which the defendant and his family lived, the victim identified the defendant's brother as her assailant.

In her signed statement to the police one day after the episode, the victim described the assailant as being six feet, two inches tall; in fact, the defendant was approximately five feet, eight inches tall. At trial, however, the victim positively identified the defendant as her assailant. Four police officers also testified, three as "fresh complaint" witnesses, and they corroborated the victim's account of the assault.

It may fairly be said that the Commonwealth's case was firm if not strong; certainly it was not overwhelming.

2. *The defendant's case.* In his opening to the jury, defense counsel said at the outset: "[I]n this case, Mr. Aviles in a way of a defense is going to present to you certain evidence. And that evidence will be mainly, first of all, evidence of an alibi." Counsel went on to describe a serious automobile accident in which the defendant was involved, the resulting personal injuries, the defendant's need to use crutches, and his

ensuing immobility. Members of the defendant's family would testify that he was at home when the assault occurred. In addition, counsel described the expected uncertainties in the victim's identification of the defendant, as well as doubts about the victim's credibility.

The defendant's father, mother and his thirteen year old sister all testified (through an interpreter) that the defendant was home on the evening of May 16 and that he had been injured in an automobile accident and used crutches until May 21 or 23 when he went on a brief trip to Puerto Rico in order to attend the high school graduation of one of his sisters. The defendant testified (also through an interpreter) that he was at home on the evening of May 16, and he denied ever having met or seen the victim other than at court proceedings. He also testified to the accident, his injuries, the events at the hospital to which he was taken (the hospital record was admitted in evidence), and the course of his subsequent treatment, including the use of crutches he had borrowed from a friend. Counsel did not request an alibi instruction and in his closing argument he made no mention of the alibi defense.

3. *The motion for a new trial.* The principal thrust of the motion was counsel's abandonment of what he had described in his opening as the defendant's principal defense, alibi. See *Commonwealth* v. *Westmoreland*, 388 Mass. 269, 272-274 (1983) (abandonment of *McHoul* and *Gould* defenses at final argument deprived defendant of effective assistance of counsel). Compare *Commonwealth* v. *Carney, post* 250 (1991) (alibi evidence promised in opening argument never presented). The specific charges are that defendant's trial counsel (i) failed to interview or call as witnesses persons, unrelated to the defendant,[1] whose testimony would bear directly and favorably on the alibi defense; (ii) failed to request an alibi instruction (no such instruction was given); (iii) failed, in his final argument, to make any mention at all of the alibi evidence; and (iv) totally misdirected his cross-

---

[1] In his closing argument, defendant's counsel admitted to the "bias" of defendant's witnesses because they were family members.

examination of the victim so that the defenses of misidentification and alibi were no longer viable; and (v) failed to file a "meritorious" motion to suppress.[2]

Counsel's failure to interview and call material witnesses who were unrelated to the defendant raises a serious question as to the effectiveness of counsel. The defendant was under the care of chiropractors who, according to their records (which were not put in evidence at trial) treated the defendant on May 12, 13, 16 (the day of the attempted rape), 18, 19, 20 and 23, as well as on numerous other dates in June, July, August, September and October. The claim of ineffectiveness on this point is particularly strong in view of the written report received by defendant's present counsel from one of the attending chiropractors (Dr. Richard F. Russell) which included a description of an examination of the defendant on May 12, four days before the assault. Dr. Russell wrote, in part, "The patient stood without bearing weight on his right leg with the aid of crutches and he was unable to perform heel or toe standing. Range of motion was painful and limited to 20 degrees of flexion, extension 10 degrees, 10 degrees of right lateral flexion, and 30 degrees of left lateral flexion."

Further, trial counsel failed to interview or call as a witness Mr. S. Anthony Caprera, an attorney who represented the defendant in connection with his accident claim, and who told present counsel, according to the latter's affidavit, that on May 19 the defendant was in Caprera's office using crutches. Also available, but not used, were the work records of the defendant's employer showing that the defendant did not work for the weeks ending May 14 through September 3, 1988.

As we have noted earlier, trial counsel did call family members who testified that the defendant was at home the evening of May 16, but the effect of their testimony was left

[2]In denying the motion for new trial, the trial judge concluded that the failure to file the motion to suppress was a tactical decision. The Commonwealth argues, and we agree, that present counsel has not shown that any motion to suppress would have been successful.

in doubt when trial counsel, for no apparent reason, failed to request an alibi instruction, see *Commonwealth* v. *McLeod*, 367 Mass. 500, 502 (1975), and, most important, failed to argue the facts of the alibi defense. Instead, trial counsel devoted approximately seventy percent of his argument (measured by pages of the record transcript) to an attack on the credibility of the victim — not with respect to the identification issue — but with respect to the details of the assault upon her, even suggesting in his conclusion comments that "she's seeking attention, she could be having marital problems, she could be having physical problems, she could be — mental problems. I don't know." Given the persuasive corroborative testimony of the police officers on the facts of the assault, the wisdom — or even the appropriateness — of this attack is not immediately apparent. While trial counsel did not leave the defendant without *any* defense, contrast *Commonwealth* v. *Haggerty*, 400 Mass. 437, 442 (1987), his failure even to mention the alibi evidence in his closing argument necessarily diminished, perhaps materially, the impact of the misidentification defense. The two defenses were mutually reinforcing, and the unexplained jettisoning of one defense clearly jeopardized the credibility of the related defense.[3]

Notwithstanding these apparent shortcomings, we are unable to conclude from the record before us that the defendant is entitled to a new trial. The shortcomings remain only apparent at this point, and a hearing is required (i) to determine whether trial counsel's management of the case in preparation and at trial was the result of deliberate tactical choices not "manifestly unreasonable," see *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978), and (ii) whether the proffered testimony of Dr. Russell and Mr. Caprera would likely have made a material difference. See *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977), ("there ought to be some showing that better work might have accomplished something material for the defense"). The outcome of the

---

[3]The prosecutor, in his closing argument, pointed out that defense counsel had not mentioned the alibi defense in his closing argument.

two issues, weighed carefully in the context of the trial, should provide sufficient information upon which to base a reasoned decision as to whether counsel's performance fell "measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Saferian*, 366 Mass. at 96. It may be that the testimony and documents counsel overlooked or ignored, combined with an appropriate closing argument, "would have better protected a defendant and [*were*] *reasonably foreseeable as such before trial. . . .*" *Commonwealth* v. *Adams*, 374 Mass. at 728, quoting from, but adding the emphasis, *Beasly* v. *United States*, 491 F.2d 687, 696 (6th Cir. 1974). See *Commonwealth* v. *Stewart*, 383 Mass. 253, 260 (1981) ("where a substantial issue is raised and is supported by a substantial evidentiary showing, the judge should hold an evidentiary hearing"). Accordingly, we affirm the judgments,[4] but we remand to the trial judge for an evidentiary hearing including findings and rulings on the motion for a new trial. See Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979).

*So ordered.*

---

[4] The defendant does not argue any issues in his appeal from the judgment that are separate from the issues raised in his motion for a new trial.