## COMMONWEALTH *vs.* RICHARD D. SMITH.

No. 98-P-1500.

Berkshire. January 7, 2000. - April 14, 2000.

Present: GREENBERG, KAPLAN, & RAPOZA, JJ.

*Accessory and Principal. Robbery. Practice, Criminal,* New trial, Assistance of counsel. *Constitutional Law,* Assistance of counsel. *Due Process of Law,* Assistance of counsel.

Evidence at the trial of indictments was sufficient for a rational finder of fact to determine that the defendant was an accessory before the fact to the armed robberies of two individuals. [130]

A criminal defendant did not demonstrate that his trial counsel provided him with ineffective assistance by failing to call a certain witness, where the decision was a reasonable tactic made in consultation with the defendant [130-132], and there was no error, in the circumstances, in the trial judge's deciding the defendant's motion for a new trial on this basis without an evidentiary hearing [132-133].

INDICTMENTS found and returned in the Superior Court Department on November 27, 1996.

The cases were heard by *Robert A. Barton,* J., and a motion for a new trial was heard by him.

*Victoria L. Nadel* for the defendant.

*Joseph A. Pieropan,* Assistant District Attorney, for the Commonwealth.

GREENBERG, J. A judge in the Superior Court found the defendant guilty of being an accessory before the fact to two counts of armed robbery. A subsequent motion for a new trial, see Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979), was denied by the same trial judge without an evidentiary hearing. The defendant appeals from the judgments and from the order denying his motion for a new trial.

Represented by new counsel in his direct appeal, the defendant argues that the evidence was insufficient to convict him of the two armed robbery charges. We conclude that the

evidence was sufficient to warrant a rational trier of fact in finding beyond a reasonable doubt that the defendant was an accomplice in the robberies of the sort described in *Commonwealth* v. *Andrews*, 34 Mass. App. Ct. 324, 330-331 (1993). See *Commonwealth* v. *Ortiz*, 424 Mass. 853, 856 (1997).

In appealing from the denial of his motion for a new trial without an evidentiary hearing, the defendant asserts that the motion should have been granted and that, at minimum, he should have been afforded an evidentiary hearing. Upon reviewing trial counsel's alleged shortcomings, we are satisfied that counsel's performance was not in any way "measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). *Commonwealth* v. *Reid*, 400 Mass. 534, 537 (1987). Accordingly, we affirm both the defendant's convictions and the order denying his motion for a new trial.

1. *Facts.* The government's case contained the following evidence.[1] On October 7, 1996, five teenagers, including Roger Stevens, Jr., and Frank,[2] broke into the home of Alex and Diane McGrory of Housatonic and made off with nearly $20,000. Stevens stayed outside acting as a "look-out" while Frank went inside and took cash from a safe. They split the money and left Housatonic.

Right after the McGrory break-in, the pair went to the Railroad Street apartment of Nicole Austin in Great Barrington to purchase marijuana with some of the money. Frank had $6,000 in cash, and Stevens had $1,200. They met the defendant who shared the apartment with Austin. According to Stevens's testimony, the defendant arranged to procure a pound of marijuana from someone named "Malik." The three of them left the apartment to use a pay telephone to contact him in Hudson, New York, just over the State line. The defendant made the call and kept Stevens and Frank out of earshot. Then he announced that Malik, who was actually Cedric Fulton, was en route with the marijuana.

About three quarters of an hour later, the three of them stood outside the Railroad Street apartment where Austin and the defendant shared rooms. Fulton, accompanied by his girlfriend, Jennifer Dallas, drove up in a car. Fulton stopped in front of the

---

[1]The defendant did not testify, and he presented no evidence in defense of the charges.

[2]A pseudonym, Frank, is used because this individual was a juvenile.

building. Stevens and Frank were buzzed through the front door of the apartment building by Austin, they went inside and drank some liquor they had purchased. For a brief time, the defendant and Fulton remained outside. Then Fulton went in the back entrance of the building and met Stevens and Frank inside the kitchen. They flashed some cash to let Fulton know that they were serious buyers. Fulton carried a glossy blue gift bag in his hand when he entered the apartment. He placed the bag on the kitchen table, took out a pair of boxer shorts, and then pulled out a small black and brown revolver. Holding the barrel to Stevens's head, he demanded "all" of their money. Stevens and Frank did not argue. They each handed Fulton their share of the proceeds from the burglary. Fulton left the apartment and joined the defendant, who had remained inside the car with Dallas. They drove back to Hudson, New York, without a word spoken about Fulton's shakedown of Stevens and Frank. During a later consensual search of the apartment, police found a blue bag and boxer-style underwear on the kitchen floor. No weapon was ever recovered.

At the defendant's trial, most of these facts as related by Stevens and Frank that gave rise to the charges against the defendant were not in dispute. Instead, trial counsel's theory, as shown by his cross-examination of the government's witnesses, was that Fulton acted alone and never disclosed his intention to rob Stevens and Frank to the defendant. Dallas's testimony, however, undermined the defendant's position. Dallas testified that Fulton had no gun in his possession en route to Great Barrington. She added that, when Fulton stepped out of the car on Railroad Street, he did not carry any bag or objects. She also stated that, during the two months of their relationship, she had never seen Fulton in possession of a weapon. A police officer's testimony at trial concerning the discovery of the blue bag and boxer shorts inside the apartment suggests that those items were left behind by Fulton because they belonged to the defendant and not to him. Additionally, there was testimony that both Stevens and Frank, on separate occasions, had seen the defendant in possession of a gun similar to the one used by Fulton, in the kitchen of the apartment. As such, the identification of the gun as belonging to the defendant was supported by strong circumstantial evidence. That the defendant spent time alone with Fulton just before and after the robbery supports the inference that the defendant participated in the criminal

enterprise. We first consider the issue raised by the defendant on his direct appeal.

2. *Sufficiency of the evidence.* The defendant maintains that the trial judge erred in denying his motion for required findings of not guilty on the basis of insufficiency of the evidence. We need not dwell at length on this argument. The government's evidence, viewed in the light most favorable to it, was sufficient for a rational fact finder to determine that the defendant was an accessory before the fact to the armed robberies of Stevens and Frank. See *Commonwealth* v. *Latimore,* 378 Mass. 671, 677-678 (1979). There is no question that the defendant was present both before and after the robberies, as we have outlined above. The government also presented sufficient evidence from which the finder of fact could infer that the defendant actually supplied Fulton with the gun used in connection with the crimes. The judge did not err in denying the motion.

3. *Ineffective assistance of counsel.* The defendant alleges that his trial counsel provided him with ineffective assistance by failing to call Fulton as a defense witness. The defendant also claims that the trial judge erred in denying the motion for a new trial on this basis without conducting an evidentiary hearing. We will consider these issues together.

In support of his motion for a new trial, the defendant submitted four affidavits, including one from Cedric Fulton. In Fulton's affidavit he avers that, just before the trial began, the defendant's trial counsel spoke to Fulton in the defendant's presence inside the holding cell at the Pittsfield Superior Court. Fulton told trial counsel that he alone decided to rob Frank and Stevens. He hatched the plan as reprisal for their failure to pay for marijuana previously "sold" to them. He also told trial counsel that the gun, a .38-caliber chrome pistol which he used to commit the robberies, was one that he had borrowed. Last, he indicated that the defendant was kept in the dark about his plan because of his friendship with Stevens and Frank.

The affidavit from defendant's trial counsel addressed the decision not to call Fulton as a witness. He confirmed that he had reviewed all of Fulton's written statements given to the police officer prior to Fulton's plea of guilty as a principal in the robberies. What is more, he had spoken to Fulton's trial attorney about whether Fulton intended to assert his Fifth Amendment rights in the event he was summoned to appear as a witness at the defendant's trial. By the morning of the defendant's

trial, he learned that Fulton was willing to back the defense and say that the defendant "knew nothing" of his plans. Even so, trial counsel and the defendant decided against putting him on the stand. The gist of it was that "[the defendant] and I felt that Fulton would do more damage than good." From trial counsel's submission there is no doubt that the decision not to call Fulton as a witness was made with the defendant's full knowledge and assent.

For his part, the defendant says in his affidavit that "[he] do[es] not remember having a conversation . . . [in the holding cell] on whether or not Cedric should testify . . . I remember telling [trial counsel] that I trusted his judgment." More particularly, there is no indication that he disagreed with the decision. Prior to the trial, there had been discussion on the subject. In short, nothing in the record remotely suggests that lawyer and client were not in accord on this decision or that more time was needed to evaluate the decision.[3] The judge, who was the fact finder at the defendant's trial, did not conduct a hearing and did not provide a memorandum of decision, but endorsed the motion with the single remark, "I do not credit Cedric Fulton's affidavit."[4]

In reviewing the defendant's claim of ineffective assistance of counsel where, as here, the motion judge was the trial judge and had the opportunity to assess the credibility of witnesses and the evidence presented, in most instances we defer to the trial judges because they are afforded considerable leeway in making those decisions. *Commonwealth* v. *Brown*, 378 Mass. 165, 170-172 (1979). *Commonwealth* v. *Barnette*, 45 Mass. App. Ct. 486, 493 (1998). The question remains, however, whether a trial judge, who was also the fact finder, when deciding a post-conviction motion for new trial on the basis of ineffective assistance of counsel predicated on counsel's failure to investigate or present a possible defense, may evaluate the cred-

---

[3]Halfway through the two-day trial, the judge conferred with the prosecutor, trial counsel, and Fulton's attorney to determine whether either side wanted to call Fulton as a witness. The prosecutor said "no," but trial counsel begged off and told the judge that he "may" call him. This response suggests that the defendant held open the option until the end of the government's case.

[4]The defendant also objects to the failure of the trial judge to make findings of fact in accordance with Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979). In this case the finding that Cedric Fulton's affidavit was not credible was the finding essential to the resolution of the issues raised by the motion. See, e.g., *Commonwealth* v. *Siciliano*, 19 Mass. App. Ct. 918, 920 n.1 (1984).

ibility of the testimony related to that defense without conducting an evidentiary hearing.

The judge here did not make any specific findings about trial counsel's performance under the test set forth in *Saferian*. In spite of this, we can reasonably infer that he credited trial counsel's affidavit in which trial counsel stated that the defendant agreed not to call Fulton and that Fulton's posttrial exoneration of the defendant was so unconvincing that such a strategy would not have affected the outcome of the case. See *Commonwealth* v. *DeVincent*, 421 Mass. 64, 68 (1995).

Whether the defendant raises a substantial issue in his post-trial submissions that requires an evidentiary hearing primarily depends upon how the facts asserted in the affidavits or other submissions compare with the facts presented at the trial. For example, in *Commonwealth* v. *Carver*, 33 Mass. App. Ct. 378 (1992), we affirmed the denial of a motion for new trial based upon newly discovered evidence without a hearing where the defendant, convicted of arson, provided an affidavit of counsel detailing a third party's confession to setting the fire. The motion judge, who was also the trial judge, denied the motion because "the alleged confession did not square with the expert testimony [at trial] regarding the fire's point of origin and its cause." *Id.* at 381. See *Commonwealth* v. *Crowe*, 21 Mass. App. Ct. 456, cert. denied sub nom. *Pirrotta* v. *Massachusetts*, 479 U.S. 838 (1986), where we affirmed the denial of a motion for new trial without a hearing in a rape conviction, rejecting the defendant's claim that an exonerated codefendant would testify that he, and not the defendant, committed the crime. The post-trial submissions in that case did not include an affidavit from the codefendant, yet we observed that, even if one had been filed, "it would have been 'the weakest sort of evidence,' and the judge would not have been required to believe it." *Id.* at 487, quoting from *Commonwealth* v. *Grace*, 370 Mass. 746, 752 (1976). See *Commonwealth* v. *DeVincent*, 421 Mass. at 69.

The defendant relies on *Commonwealth* v. *Epsom*, 422 Mass. 1002 (1996), as authority for the proposition that he should have been afforded an evidentiary hearing on his motion for a new trial. In that case, the Supreme Judicial Court remanded for an evidentiary hearing. Unlike here, in *Epsom*, the affidavit submitted to the motion judge, who had not been the trial judge, contained testimony that would have supported the defendant's claim of self-defense and would have resulted in a jury instruc-

tion thereon. Notably absent is any indication that the failure to call the witness was prompted by any tactical consideration; instead, it appears to have been an oversight. The record here reveals that the decision not to call Fulton was a considered one that was made by trial counsel in consultation with the defendant. The status of the motion judge as fact finder at the trial placed him in a particularly appropriate position to evaluate Fulton's affidavit. *Epsom* does not control under the distinguishable facts of this case.

There is an additional reason in the record that supports the judge's decision. Fulton's affidavit avers that he shared proceeds from the robbery with the defendant. The affidavit of defendant's trial counsel states that: "it would appear from Fulton's testimony that [the defendant] had been paid for his role in the robbery. [The defendant] and I felt that Fulton would do more damage than good." See *Commonwealth* v. *Jenks*, 426 Mass. 582, 587 (1998) (no abuse of discretion to deny motion for new trial without a hearing where judge found proposed testimony contained matter both beneficial and damaging to the defendant).

In the circumstances, therefore, it was not error for the trial judge, who heard and evaluated all witnesses at the underlying jury-waived trial and read Fulton's affidavit, to decide the issue of credibility without an evidentiary hearing.

*Judgments affirmed.*

*Order denying motion for a new trial affirmed.*