Commonwealth v. Harding.

COMMONWEALTH vs. SEAN HARDING.

No. 99-P-312.

Barnstable. February 8, 2001. - December 13, 2001.

Present: Greenberg, Beck, & Rapoza, JJ.

*Practice, Criminal,* Findings by judge. *Entrapment.*

On a posttrial motion for a new trial in which the motion judge, who was also the trial judge, denied the criminal defendant relief without a hearing or making any findings on the defendant's contentions that his trial counsel failed to assert as defenses police entrapment and certain due process violations, this court remanded the case to the trial judge for findings addressing the reasons counsel may have had for conducting the defense as he did. [381-383] Rapoza, J., concurring in result.

Indictments found and returned in the Superior Court Department on January 7, 1997.

The cases were heard by *Richard F. Connon*, J., and a motion for a new trial was considered by him.

*Thomas C. Foley* for the defendant.

*Julia K. Holler*, Assistant District Attorney, for the Commonwealth.

Greenberg, J. No dispute exists that the defendant, Sean Harding, committed the acts constituting two counts of distribution of cocaine of which he was convicted. G. L. c. 94C, § 32A(*c*). The defendant seeks to be excused because, he claims, the Commonwealth failed to prove a case from which a fact finder could justifiably infer, beyond a reasonable doubt, that police did not entrap him into committing the crimes. He also claims due process violations. See *Commonwealth* v. *Shuman*, 391 Mass. 345, 353-355 (1984). These issues were raised in the defendant's posttrial motion for new trial in which he faults trial counsel for failure to assert these defenses. See *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). The motion

judge, who also presided at the bench trial, denied relief without a hearing or making any findings. On appeal, the defendant claims that it was error to deny his motion.

To raise an entrapment defense in the course of trial, the defendant must introduce some evidence of inducement by a government agent or one acting at his direction. See *Commonwealth* v. *Miller*, 361 Mass. 644, 651-652 (1972); *Commonwealth* v. *Thompson*, 382 Mass. 379, 384-385 (1981). "By the established rule, an issue of entrapment is not raised unless it appears that a Commonwealth agent did something more than merely request or solicit the defendant to do the acts that comprised the given crime." *Commonwealth* v. *LaBonte*, 25 Mass. App. Ct. 190, 194 (1987). Once an entrapment defense is raised, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant was "predisposed" to commit the crime. See *Commonwealth* v. *Miller*, *supra* at 652.

Examining the case in a light most favorable to the defendant, his thirteen-page affidavit, supplemented by portions of the trial record, reveals the following sequence of events. State police Trooper Daralyn Ross, clad in jeans and tee shirt, arrived at the defendant's house on the evening of October 18, 1996. With her was Tracy Amado, recently released from a short stint at the Barnstable house of correction, where he had met the defendant. Amado, turned informer, thought he could arrange a "buy" for Trooper Ross. The defendant, an admitted cocaine addict, allowed them inside where they encountered three others. They were the defendant's cousin, Brenda Harding; James Close, the biological father of Brenda Harding's child; and a mutual friend, Michael Ketchem. Negotiation ensued, principally between Close and the supposed buyers. A small amount of cocaine was sold to Ross. The defendant was not part of the transaction. This initial foray did not figure in the indictments brought against him.

A second visit by Ross to the defendant's house occurred on October 23, 1996. Trooper John Milos accompanied Ross and waited outside for her return. Ross was able to get Ketchem to take her to a dealer to purchase some crack cocaine. A third visit on October 30 resulted in Ross and the defendant driving in Ross's car to a house in Plymouth, where the defendant

procured some crack cocaine for Ross's personal use. In his affidavit, the defendant claims to have no recollection of the events because he was "high on cocaine at the time." On cross-examination during trial, Ross admitted that the defendant was "obviously high." She described him as fidgety, talkative, in motion, and looking around a lot.

On November 5, 1996, Ross and Milos spoke with the defendant's cousin and then left in search of the defendant. In his affidavit, the defendant states that Ross intercepted him at a gas station, where he had stopped with his girlfriend before going on to Penner's, a restaurant. At Penner's, he ate dinner, drank heavily, and got very drunk. Next, he and his girlfriend stopped at "The Pub" for another libation. While the defendant's girlfriend was in the restroom, Ross arrived at "The Pub." According to the defendant's affidavit, Ross "was practically begging me now for a rock of cocaine." At this point, his girlfriend returned from the restroom to discover Ross with the defendant making plans to obtain cocaine. The girlfriend left in a huff, without so much as a goodbye. The defendant claims to have been very drunk, but admits that he contributed some of the purchase money toward obtaining the cocaine. He also alleges that Ross "knew that [he] was only helping her because [he] expected a hit."

Seated as a passenger in the officer's car, he directed her to a place in Bourne where the defendant thought he might find a dealer. They were informed that the "potential" seller had gone to Plymouth. Eventually, they caught up with him there, and the defendant purchased some crack from the seller and borrowed a pipe used to consume it. The defendant broke off a piece of the crack and immediately began smoking inside the car, which remained parked in front of the house in Plymouth. Ross refused the defendant's request for another hit.

At trial, Ross had a different version of the events of October 30 and November 5. However, she did not file any affidavit to oppose the defendant's averments as explicated in his posttrial affidavit. The Commonwealth argues that the defendant has embellished his affidavit with statements that conflicted with his trial testimony in several key respects. In essence, the Commonwealth contends that the evidence at trial did not support a

defense of entrapment. His defense strategy, it seemed, was reasonable: the Commonwealth brought the charges in the wrong county — improper venue.

We may pretermit the question whether there was enough evidence for defense counsel to mount a defense of entrapment, see *Commonwealth* v. *Harvard*, 356 Mass. 452, 459 (1969), or whether the methods used by Ross to catch the defendant were "so outrageous or wicked as to deny him due process," *Commonwealth* v. *LaBonte*, 25 Mass. App. Ct at 195, for without any findings, we cannot determine the reason for the judge's decision. See Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979).

A similar dilemma was created in *Commonwealth* v. *Smith*, 49 Mass. App. Ct. 127, 132-133 (2000), where the motion judge, who also was the trial judge, failed to make specific findings about trial counsel's performance under the test set forth in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). That omission did not prove fatal there because we could infer from the denial of the defendant's motion for new trial that the judge credited trial counsel's affidavit in which he explained why he did not call a witness whose "posttrial exoneration of the defendant was so unconvincing that such a strategy would not have affected the outcome of the case." *Commonwealth* v. *Smith*, 49 Mass. App. Ct. at 132. See *Commonwealth* v. *DeVincent*, 421 Mass. 64, 68 (1995).

Here, the defendant's affidavit raises questions concerning the efficacy of his trial counsel's strategy. Without a counter-affidavit of trial counsel, which the Commonwealth was in the best position to obtain, compare *Commonwealth* v. *Smith*, 19 Mass. App. Ct. 997, 998 (1985), there remain unresolved questions whether abandoning the entrapment defense made sense.[1]

---

[1] The Commonwealth, citing *United States* v. *Coady*, 809 F.2d 119, 121 (1st Cir. 1987), suggests that defense counsel's decision to waive the entrapment defense kept out certain highly damaging evidence of the items seized from the defendant's home at the time of his arrest. The Commonwealth claims that the defendant made a well-advised choice and that defense counsel should not be faulted. We concur that the defendant could not "have his cake and eat it too." *Ibid.* To this, however, the defendant responds — correctly, we think — that the search of the defendant's home on November 8, 1996, revealed weapons not shown to be unlawfully possessed and other objects consistent with personal use of narcotics, not distribution. The evidence sheds no light

Notably absent is any indication that his decision to present a technical defense and give up the possibility of an entrapment defense, or to forgo challenging the police behavior on due process grounds, were reasonable calculations.

On this record, we are not prepared to say that defense counsel's failure to explore or present an entrapment defense violates the test set forth in *Saferian*. However, it is an issue of sufficient importance to warrant findings and perhaps an evidentiary hearing concerning counsel's reasons for conducting the defense as he did.[2] See Mass.R.Crim.P. 30(b). It is one thing to purchase cocaine from someone who is a known addict; such a person is often an unwary criminal. It is another thing to stand by while a defendant drinks to excess, particularly where that involves following the target to his social engagements. Otherwise stated, was the defendant initially lured by the Commonwealth into breaking the law or did the Commonwealth merely provide a "predisposed" person the opportunity to commit a crime? See *Commonwealth* v. *Miller*, 361 Mass. at 652.[3] In particular, the judge's inquiry and his findings should address

---

on whether he was predisposed to sell cocaine on the two occasions which resulted in convictions. It is improbable that the weapons seized from the defendant's home would be admissible for any purpose. The record is devoid of any indication that the defendant's possession of the guns was unlawful, nor has the Commonwealth amplified that aspect of the record with contrary information.

[2]We acknowledge the concurrence's decision that an evidentiary hearing on the due process claim is required. However, in the circumstances of this case, we prefer to leave the question of whether to conduct an evidentiary hearing to the discretion of the motion judge. See *Commonwealth* v. *DeVincent*, 421 Mass. 64, 67 (1995). See also *Commonwealth* v. *DeChristoforo*, 360 Mass. 531, 542 (1971); *Commonwealth* v. *Little*, 384 Mass. 262, 268-269 (1981).

[3]We respectfully disagree with the concurrence's conclusion that the defendant was predisposed to commit the crimes charged, and, therefore, was not entrapped, as a matter of law. If predisposition merely required willingness to commit the crime, the defendant would have been predisposed. However, the concept of predisposition "has positional as well as dispositional force." *United States* v. *Hollingsworth*, 27 F.3d 1196, 1200 (7th Cir. 1994). One Federal court has utilized a multi-factor test for determining predisposition. See *United States* v. *Thickstun*, 110 F.3d 1394, 1396 (9th Cir.), cert. denied, 522 U.S. 917 (1997). The factors are as follows: "(1) the defendant's character and reputation; (2) whether the government initially suggested the criminal activity; (3) whether the defendant engaged in the activity for profit; (4) whether the defendant showed any reluctance; and (5) the nature of the government's inducement." *Ibid.*

the reasons counsel may have had for conducting the defense as he did. See *Commonwealth* v. *Aviles*, 31 Mass. App. Ct. 244, 248-249 (1991). We remand to the Superior Court to make findings on the defendant's rule 30(b) motion.

*So ordered.*

RAPOZA, J. (concurring in the result). I agree that this matter should be remanded to the Superior Court although, unlike the majority, I would remand for both an evidentiary hearing and findings on the defendant's motion for new trial. Although the motion judge presided over the defendant's jury-waived trial, and later had the benefit of the defendant's affidavit and two others in support of the motion, his summary denial of the defendant's motion was inadequate. See *Commonwealth* v. *Brookins*, 416 Mass. 97, 104 (1993) (a stipulation of facts or an evidentiary hearing followed by findings is required before an appellate court can order a new trial based on ineffective assistance of counsel). See also Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979) ("Upon the motion the trial judge shall make such findings of fact as are necessary to resolve the defendant's allegations of error of law").

I believe that remand is appropriate considering the defendant's claim that the actions of the State police toward him were so fundamentally unfair as to constitute a denial of due process, an issue apparently not raised by trial counsel. On the other hand, I do not conclude, as does the majority, that a remand is warranted for consideration of the defendant's entrapment claim.

Addressing the entrapment issue first, even without affidavits from either trial counsel or the Commonwealth, it is clear that there is no merit to the defendant's postconviction entrapment claim. The evidence at trial, supplemented by the affidavits filed by the defendant, fails to demonstrate either that trial counsel's behavior fell measurably below that expected from an ordinary fallible lawyer or that the defendant was deprived of an otherwise available, substantial ground of defense. See *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

As to the first prong of *Saferian*, the lack of an entrapment defense actually produced several results beneficial to the defendant. First, it eliminated the prospect that the Commonwealth would introduce in evidence several shotguns, rifles, and seven pounds of ammunition seized at the defendant's home to show his likely involvement in the drug trade. Second, by not pursuing an entrapment defense, trial counsel prevented the Commonwealth from introducing the defendant's prior record of convictions for drug distribution and related offenses as evidence of his predisposition to commit the crimes charged.[1] See *Commonwealth* v. *Vargas*, 417 Mass. 792, 796 (1994). I also note that, whatever else might be said of trial counsel's behavior at trial, the defendant was acquitted of five of the seven charges against him.

Turning to the merits of the entrapment defense itself, the defendant was not deprived of an available, substantial ground of defense where, considering the facts contained in his supporting affidavits, he has failed to make even a threshold showing of entrapment. The defendant's affidavit, in essence, sets out his assertion that he is a drug addict who was willing to cooperate with Ross and assist her in obtaining cocaine because he hoped to receive a share of the drugs in return. The trial judge, in sentencing the defendant, acknowledged the defendant's predisposition to participate in such drug deals. The use of such a defendant by the police was, as he described it, "like shooting fish in a barrel."

Not only was there compelling evidence of the defendant's predisposition to assist in the procurement of drugs, but there

---

[1] The defendant's prior drug involvement included (1) a conviction in 1993 for possession with intent to distribute cocaine on which he received a one year committed sentence; (2) a conviction in February, 1994, on three counts of drug distribution on which he received a one-year sentence along with probation and a suspended three- to five-year sentence; and (3) a conviction in May, 1994, of conspiracy to violate the Controlled Substances Act on which he received a six-month committed sentence. Indeed, during the entire period that the defendant was dealing with Trooper Ross, he was apparently on probation for drug distribution. As a result of the guilty verdicts in this case, he was found in violation of his probation and was ordered to serve a three- to five-year committed sentence. That sentence was ordered to be served concurrent with two three- to five-year sentences imposed concurrently on the two indictments on which he was found guilty.

was no evidence whatsoever that Ross ever promised him drugs or any share of the cocaine which she obtained in return for his assistance. Nor does the defendant claim that he was ever given drugs for helping Ross. Indeed, Ross repeatedly refused the defendant's pleas for cocaine, rebuffing him on each occasion that he made such a request.[2]

The core of the defendant's entrapment claim is not that the troopers sought to induce an otherwise unwilling defendant to cooperate with promises of crack cocaine. Rather, the defendant asserts that Ross's mere awareness that he was a cocaine addict was sufficient to implicate the entrapment defense where the trooper sought his assistance in the procurement of that same drug. The defendant contends that where law enforcement officers are "experts in narcotics" they should be aware that "an addict . . . would do anything for a hit." When dealing with an addict, he reasons, law enforcement officers should realize that such a person cannot say "no" to even the possibility of realizing his next "hit." Essentially, he concludes that any request by a law enforcement officer to an addict to assist in the purchase of drugs is, by virtue of his addiction alone, an entrapment of that person. That is not the law of this Commonwealth, and I see no reason to start down the path suggested by the defendant.

The defendant's second claim in support of his motion for new trial rests on a somewhat different footing than his entrapment argument. He asserts that the conduct of the police toward him was so outrageous and offensive to fair play as to constitute a violation of due process. See *United States* v. *Russell*, 411

---

[2]Although the defendant does allege that he received some of the cocaine from the second trip to Walnut Street, his description of that event is inconsistent with an entrapment claim. On that occasion, he asserts, he was interested in obtaining some of the crack cocaine, but he did not rely (as he had previously done, unsuccessfully) on Ross's willingness to share the drugs that she had obtained. On this occasion, he admits that, with respect to the rock that was purchased, "I even put a little money toward it." Elsewhere he describes his actions as "chipp[ing] in a little money towards the rock." After obtaining the crack cocaine at the Walnut Street address, he claims that he returned to the car, broke off a piece of the rock, and smoked it. We are left to assume that, in the defendant's mind, he got what he paid for, not that he was being enticed into criminal activity by Ross with offers of cocaine. Indeed, the defendant admits that when he finished smoking his share and asked for more, Ross, as on previous occasions, said no.

U.S. 423, 431-432 (1973) ("[W]e may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction").

The defendant contends that Trooper Ross acted with excessive zeal in pursuit of his assistance, not only persistently contacting him at his home, but also trailing him to a gas station and, eventually, following him to a bar where he and his girlfriend had gone to spend an evening together. Moreover, Ross knew that the defendant was addicted to both alcohol and drugs and that he was clearly under the influence of one substance or the other whenever the trooper solicited his help. The defendant paints a scenario in which Ross took unfair advantage of him when he was high (and presumably more compliant) to secure his assistance in obtaining drugs. He asserts, in effect, that he was subject to government conduct that "involved . . . pressure [or] persistent exploitation of personal weakness, as might occur if an agent preys upon an addict's need for narcotic." *Commonwealth* v. *Shuman*, 391 Mass. 345, 355 (1984), quoting from *United States* v. *Williams*, 705 F.2d 603, 620 (2d Cir.), cert. denied, 464 U.S. 1007 (1983). Accordingly, he characterizes Ross's actions as being so egregious as to bar his conviction. See *Commonwealth* v. *Shuman*, *supra* at 354.

The defendant's due process claim is based not only on facts contained in his affidavit, but also on the trial testimony of Ross. Thus, relative to the October 30, 1996, incident, Ross testified that the defendant was "obviously high." Nonetheless, she persisted and used him as an intermediary for the purchase of cocaine while he was in that condition. On the occasion of the November 5, 1996, incident, Ross returned to the defendant's house and, determining that he had gone out with his girlfriend, tracked him down at a local gas station where they had stopped prior to going to dinner. Ross once again solicited his help in getting cocaine. He agreed to meet her later in the evening and proceeded to dinner where he drank to excess. Thereafter, according to the defendant, he went to a bar where he imbibed even more alcohol. He claims that Ross found him there in an

intoxicated state. Nonetheless, she persisted and renewed her request that he help her obtain cocaine. When the defendant's girlfriend went to the bathroom, Ross put her arm on his shoulder and continued her plea for his assistance. The defendant's girlfriend returned to find Ross draped on her inebriated boyfriend. The girlfriend abruptly left the bar, and the defendant finally took Ross to get some cocaine.

I question whether, in the last analysis, the defendant will be able to show that Ross's aggressive style was so "outrageous and offensive to fair play as to constitute a violation of due process." See *United States* v. *Russell*, 411 U.S. at 431-432. Nonetheless, the defendant has woven together sufficient evidence from the trial testimony and posttrial affidavits to merit both an evidentiary hearing and written findings by the judge on this issue. See *Commonwealth* v. *Brookins*, 416 Mass. at 104.