## COMMONWEALTH VS. THOMAS DELACRUZ.

No. 03-P-200.

Worcester. March 3, 2004. - July 12, 2004.

Present: GREENBERG, BROWN, & SMITH, JJ.

Further appellate review granted. 442 Mass. 1107 (2004).

*Armed Assault with Intent to Rob. Practice, Criminal,* Argument by prosecutor, Assistance of counsel. *Evidence,* Argument by prosecutor. *Constitutional Law,* Assistance of counsel.

Statement that the question whether counsel may read from the transcript during closing argument at a criminal trial should be left to the sound discretion of the trial judge, and that the better practice would be for counsel, prior to the beginning of closing arguments, to make a proffer to the judge of what parts of the transcript he or she intends to read and for what purpose. [447-449]

At the trial of indictments charging the defendant with armed assault with intent to rob, the prosecutor's reading verbatim portions of the trial transcript during closing argument did not create a substantial risk of a miscarriage of justice, where the judge forcefully instructed the jury that arguments of counsel were not evidence, that the jury were the sole finder of facts, and that it was for the jury to assess the credibility of witnesses. [449]

A Superior Court judge erred in not holding an evidentiary hearing on a criminal defendant's motion for a new trial on the ground that the failure of the defendant's counsel to interview or call a particular witness whose testimony would have directly contradicted that of a prosecution witness amounted to ineffective assistance of counsel, where the defendant's counsel in his affidavit filed in support of the motion expressed second thoughts about the decision not to call that witness out of a concern that the witness's criminal record would leave him vulnerable to impeachment. [449-452]

INDICTMENTS found and returned in the Superior Court Department on April 14, 2000.

The cases were tried before *James P. Donohue,* J., and a motion for a new trial, filed on April 18, 2003, was considered by him.

*James L. Rogal* for the defendant.

*David W. Waterfall,* Assistant District Attorney, for the Commonwealth.

GREENBERG, J. From convictions of armed assault with intent to rob two individuals inside a jewelry store in Shrewsbury, the defendant, Thomas Delacruz, appeals. These offenses occurred in the late morning of January 22, 2000, when George Abien, the owner of the store, and his cousin, Aziz Bastug, were at work. The defendant raises issues concerning prosecutorial excess in closing argument and the ineffectiveness of trial counsel. As to the second issue, the appeal is from the denial of a motion for new trial.

We set forth the evidence as presented to the jury insofar as it is necessary to discuss the defendant's claims, particularly in order to determine whether defense counsel's omissions "likely deprived the defendant of an otherwise available, substantial ground of defen[s]e," *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974), or whether "better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield,* 373 Mass. 109, 115 (1977). *Commonwealth* v. *Curtis,* 417 Mass. 619, 625 n.4 (1994).

The Commonwealth's theory at trial was that the defendant and two accomplices, James Forte and Edgar Rivera, planned and committed the robbery. Forte was the Commonwealth's sole material witness, and testified as a result of a plea agreement with the Commonwealth in exchange for a reduced sentence in this case and four other cases. According to Forte, about a week prior to the robbery, he drove with the defendant and Rivera to Shrewsbury in the defendant's car. They cased the store at night, and the plan was to rob the store the next day. Back at the defendant's apartment, an argument ensued between Forte and the defendant, during which the defendant struck Forte with a forty-pound dumbbell. That put the robbery plan on ice, but not for long.

About a week later, according to Forte, the three of them left from Rivera's aunt's apartment on Chandler Street in Worcester and drove to a parking lot close to the store. The defendant supplied Forte with a loaded handgun. He had assigned Forte and Rivera as the hold-up men, and he would act as lookout and drive the getaway car that would be parked nearby. There was a

prearranged escape route for Rivera and Forte to follow to the waiting vehicle. Both of them were to don ski masks. Rivera was supplied with a bag for the loot.

From the moment Forte and Rivera entered the store, the whole scheme went awry. Forte jumped over a merchandise counter, prompting Bastug to jump from his chair in an attempt to foil the robbery by wrestling Forte to the ground. A random shot was fired as Forte grappled with Bastug. A second errant shot was fired before Forte dropped the gun. Meanwhile, Rivera bagged some jewelry and fled the scene, leaving Forte to fend off Abien and Bastug, who had Forte pinned down. At that point, Forte broke loose and dove through a glass window, ripping off his sweatshirt, ski mask, and sneakers in the process. Once outside, he discovered that his sweatpants had fallen below his knees. So as not to impede his escape, he removed them and in that state of undress, managed to flag down the defendant and Rivera as they were about to drive out of a nearby parking lot. They repaired to Rivera's aunt's apartment.

The next day the defendant's car was stopped for a minor traffic violation. Forte was inside the car and detained. He was brought to the Shrewsbury police station where he confessed to the robbery and implicated Rivera and the defendant.

The defendant testified to an alibi and denied that he was involved in the robbery; not only was he not at the scene of the crime, but he played no role in planning or executing it.

1. *Prosecutor's closing argument.* Because the Commonwealth's case rested almost entirely on Forte's testimony, the bulk of the prosecutor's closing argument dealt with Forte's version of the events. On appeal, the defendant now contends that the prosecutor unfairly emphasized and bolstered Forte's credibility by reading verbatim portions of the trial transcript and stating facts that were not in evidence. Trial counsel lodged no objection to the reading of the transcript during the prosecutor's argument. Our review is thus confined to deciding whether, if error, a substantial risk of a miscarriage of justice occurred. See *Commonwealth* v. *Purrier*, 54 Mass. App. Ct. 397, 403 (2002).

It is important to note that the defendant does not contend that the prosecutor misquoted the transcript or that he read

testimony that was struck or offered for nonsubstantive purposes. Rather, the defendant's argument is that, by reading selected portions, the prosecutor impermissibly highlighted and overemphasized certain aspects of the case.

The matter is one of first impression in the Commonwealth. In support of his position, the defendant relies on two cases decided by the Illinois Appeals Court, *People* v. *Hoggs*, 17 Ill. App. 3d 67, 70 (1974), and *People* v. *Ammons*, 251 Ill. App. 3d 345, 347 (1993) (reading from transcripts during closing argument is improper). On the other hand, there is ample precedent for allowing counsel to read portions of the transcript during closing argument. See *Byrnes* v. *United States*, 327 F.2d 825, 840 (9th Cir.), cert. denied, 377 U.S. 970 (1964) ("reading of the reporter's transcript of the precise language used by the witness is the only safe way to be accurate"); *United States* v. *Kuta*, 518 F.2d 947, 954 (7th Cir.), cert. denied, 423 U.S. 1014 (1975) ("no reason to establish a per se rule penalizing accuracy").

As far as we are able to discern, Illinois is the only jurisdiction that has adopted a per se rule prohibiting such reading. It seems to us that the better rule relegates the question of whether counsel may read from the transcript during closing argument to the sound discretion of the trial judge. Ordinarily, the trial judge is in the best position to determine, ahead of time, whether such a reading is appropriate and to place whatever limits on the prosecutor or trial counsel as are necessary to expedite the proceedings. We can envision a situation in which both sides could engage in prolonged readings, to counter one another, in contradiction of the rule that the jury's collective memory controls. The situation is analogous to the trial judge having discretion to permit the jury to read portions of the transcript at their own request. See *United States* v. *McCoy*, 517 F.2d 41, 44 (7th Cir. 1975); *Stone* v. *United States*, 506 F.2d 561, 564 (8th Cir. 1974).

Accordingly, we think the better practice would be for counsel, prior to the beginning of closing arguments, to make a proffer to the judge of what parts of the transcript he or she intends to read and for what purpose. This protocol would allow opposing counsel to be heard on the request, and permit the

judge to place appropriate limitations on out-of-context readings of what purports to be an official version of what was said. The judge can then evaluate counsel's proffer and determine the likelihood of prejudice. See *Bing Fa Yuen* v. *State*, 43 Md. App. 109, 118-119 (1979). The judge is, of course, authorized under Mass.R.Crim.P. 24(a), 378 Mass. 895 (1979), to limit counsel to the thirty minutes permitted for final argument, which itself should deter prolonged or unnecessary quotations from the transcript. Ultimately, it is the judge who has the duty to guard against excesses in closing argument that may affect the integrity of the trial. See *Commonwealth* v. *Smith*, 387 Mass. 900, 903 (1983). Except in extreme circumstances, we see no reason for the judge not to permit the prosecutor to read portions of the transcript, especially where defense counsel will have an opportunity, if desired, to read additional portions to supply allegedly missing context. A trial judge does not, however, necessarily abuse his discretion when he denies such a request.

In the instant case, the judge forcefully instructed the jury that arguments of counsel were not evidence, that the jury were the sole finder of facts, and that it was for the jury to assess the credibility of the witness. We conclude that there was no substantial risk of a miscarriage of justice in the circumstances of this case.

2. *Ineffective assistance of counsel.* The defendant's strongest ground for requesting a new trial was trial counsel's failure to call Rivera as a defense witness. Prior to the defendant's trial, Rivera was apprehended and charged for his role in the robbery. According to trial counsel's affidavit, filed in support of the defendant's new trial motion, he was aware during preparation of the defendant's trial that Rivera had pleaded guilty to the same crime and was serving his sentence. In addition, trial counsel allowed that "Rivera was willing to testify that the defendant was not involved in the planning or execution of the robbery." That testimony would have directly contradicted Forte's testimony. As a reason for not calling Rivera as a defense witness, trial counsel stated that Rivera's testimony could be impeached because "Rivera was a convicted felon." Trial counsel admitted that "[i]n hindsight, I may have made a

mistake because Mr. Rivera was an exculpatory witness who I believe could have made a substantial difference."

Rivera also filed an affidavit in which he stated that the defendant had neither knowledge of the robbery plan nor any actual involvement as an accessory before or after its commission. He indicated that while the defendant was awaiting trial, he contacted the defendant's trial counsel and told him of his availability as a defense witness.

The judge, who did not conduct an evidentiary hearing on the new trial motion, Mass.R.Crim.P. 30, 378 Mass. 900 (1979), chalked up trial counsel's decision as tactical and not unreasonable when made. In his memorandum of decision, he repeated trial counsel's rationale that "if Rivera took the stand, he ran a substantial risk of being impeached because of his criminal record." He commended trial counsel's effective cross-examination of Forte which, among other things, established that Forte had an axe to grind with the defendant because the defendant had hit him with a forty-pound dumbbell prior to the robbery and because he had a yearning for the defendant's girlfriend.

It is true that we give great deference to the judge's disposition of a rule 30 motion, especially when he or she was the trial judge. *Commonwealth* v. *Barnette*, 45 Mass. App. Ct. 486, 493 (1998). Here, however, that deference cannot prevail. This is not a case where the decision not to call a witness could be called "tactical." Rivera's testimony, if believed, would have exonerated the defendant. Contrast *Commonwealth* v. *Knight*, 437 Mass. 487, 500-501 (2002) (decision not to call witness was tactical where proposed testimony would have been cumulative and witness's credibility was subject to serious challenge). While it is true that Rivera's criminal record would have been introduced to impeach his credibility, Forte, himself, was no choirboy. The jury were informed that as part of his plea bargain, Forte pleaded guilty to four other armed robberies.

In our view, the judge was too quick in finding that Rivera's criminal record would have wrecked the defense. That Rivera had a record or had pleaded guilty to the crime is not dispositive. The Supreme Judicial Court has reversed several similar cases based on trial counsel's failure to investigate and pursue the only realistic defense by failure to call a material witness. See

*Commonwealth* v. *Haggerty*, 400 Mass. 437, 441-442 (1987); *Commonwealth* v. *Hill*, 432 Mass. 704, 717-719 (2000). See also *Eldridge* v. *Atkins*, 665 F.2d 228, 236 (8th Cir. 1981) (ineffective assistance presumed when counsel failed to interview important eye witnesses), and other Federal cases finding ineffective assistance of counsel for failure to interview witnesses, cited in Klein, The Emperor Gideon Has No Clothes: The Empty Promise of the Constitutional Right to Effective Assistance of Counsel, 13 Hastings Const. L. Quarterly 625, 665 nn.221 & 222 (1986).

The *Hill* case is particularly instructive. There, one of the grounds for granting a new trial was trial counsel's failure to call a witness who would have had a substantial effect on the jury's decision. Hill was convicted of murdering the grandfather of a drug dealer while attempting to steal money or drugs from the drug dealer's apartment. A neighbor testified in the codefendant's separate trial that he saw only one attacker leave the apartment, which contradicted the Commonwealth's theory that the crime involved two intruders. The motion judge concluded that trial counsel's failure to call this neighbor as a witness deprived Hill of an apparently impartial witness with no motive to lie. On appeal, the court agreed with the motion judge that trial counsel was ineffective in a constitutional sense by failing to call the witness, stating that "[e]vidence that contradicted the Commonwealth's entire theory of the case could have raised a reasonable doubt in the jurors' minds." *Commonwealth* v. *Hill*, 432 Mass. at 719.

Likewise, in the instant case, there was a serious question concerning the number of persons involved in the commission of the crime. In light of Forte's testimony, which was the product of a plea agreement with the Commonwealth, it is inescapable that the defendant was prejudiced by counsel's failure to at least interview and possibly produce Rivera as a witness at trial. Although Rivera was not a "disinterested" witness whose credibility was unquestionable, the Commonwealth's case against the defendant was not strong. It rested completely on Forte's plea-bargained testimony. Because trial counsel failed to consider Rivera as a counterweight, "it is analogous to those cases where, at trial, defense counsel abandons the only defense

available to a defendant and leaves the defendant without any defense at all." *Commonwealth* v. *Haggerty*, 400 Mass. at 441.

We have examined similar cases that have gone the other way. See *Commonwealth* v. *Haas*, 398 Mass. 806, 811 (1986); *Commonwealth* v. *Gould*, 413 Mass. 707, 711 (1992); *Commonwealth* v. *Haley*, 413 Mass. 770, 777 (1992); *Commonwealth* v. *Cepulonis*, 9 Mass. App. Ct. 302, 307-308 (1980); *Commonwealth* v. *Messere*, 14 Mass. App. Ct. 1, 10-11 (1982); and other decisions cited by the Commonwealth in its brief. Nearly all of them bear the earmarks of posttrial carpentry. Here, the judge did not reject Rivera's affidavit on that particular basis; rather, he dismissed it only on the possibility that impeachment by prior convictions would undermine Rivera's credibility.

As previously stated, the judge denied the defendant's rule 30 motion on the basis of affidavits. There was no evidentiary hearing. In a case like this, where the judge adopted defense counsel's rationale concerning Rivera's criminal record as justification for not calling Rivera as a witness, but counsel expressed second thoughts about that decision, the defendant is entitled to at least an evidentiary hearing. See *Commonwealth* v. *Harding*, 53 Mass. App. Ct. 378, 382 n.2 (2001). Particularly where, as here, the motion judge who was also the trial judge has retired, and because a substantial issue exists, the evidentiary hearing should include a re-evaluation of counsel's reasoning as articulated in his affidavit and, if possible, an assessment of the credibility of Rivera's affidavit, especially where he may be available as a witness for hearing. See *Commonwealth* v. *Licata*, 412 Mass. 654, 660-661 (1992) (defendant entitled to have a hearing on his motion for new trial where his allegations, if true, raised serious issues as to the adequacy of his trial counsel's defense).

The defendant makes additional claims of error: the judge's failure to take any action in response to the events of September 11, 2001,[1] including conducting voir dire of the jury prior to the deliberations; and trial counsel's decision to allow the defendant to testify in his own behalf. None of these arguments have any merit and require no elaboration.

---

[1]The last day of trial testimony was September 11, 2001; jury deliberations began on September 12, 2001.

We affirm the defendant's convictions. We vacate the judge's ruling in the motion for new trial and remand the case to the Superior Court for an evidentiary hearing on the motion for a new trial.

*So ordered.*